865 So.2d 176 (2003)
Elvira MENJIVAR
v.
ROUSE'S ENTERPRISES, L.L.C., ABC Insurance Company.
No. 03-CA-0808.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
Edwin R. Fleischmann, Jr., Fleischmann Law Firm, Metairie, LA, for Plaintiff/Appellant.
J. Rene Williams, Lazarus, Brown & Williams, Houma, LA, for Defendants/Appellees.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Plaintiff, Elvira Menjivar, appeals a adverse judgment of the trial court in her slip and fall action that found defendant, Rouse's Enterprises, L.L.C. (Rouse), free from any negligence. For reasons that follow, we affirm.
Mrs. Menjivar filed suit against Rouse and its insurer on February 2, 2002. The *177 original petition alleges that Mrs. Menjivar was shopping at defendant supermarket in Metairie on Sunday, April 22, 2001. As she left the store she slipped on a foreign object and fell onto her left knee, twisting her back. The matter was joined, and in due course, a bench trial on the merits was held. Subsequently, the court rendered judgment with reasons in favor of defendant. It is that judgment on appeal in this matter.
At the trial, the court heard testimony from Itza Cabajal, daughter of the plaintiff. Ms. Cabajal explained that she was walking behind her mother as they walked down the exit ramp from Rouse's Supermarket. The women had gone into the store to purchase bread and other items for their church dinner. As they walked down the ramp, Mrs. Menjivar was looking in her purse for her keys. Mrs. Cabajal stated that she saw her mother trip. Because she thought her mother caught herself and was unhurt, Ms. Cabajal continued walking. She realized her mother was hurt when she looked back and saw that her mother's knee was bleeding. Mrs. Menjivar showed her daughter the cigarette butt on which she slipped. The two women went to their church and participated in the event. Later, Mrs. Menjivar complained of back pain and the two decided to return to Rouses's to report the incident.
Yolanda Cerrato-Valladares, a friend of the plaintiff, testified that she received a telephone call from Ms. Cabajal. Ms. Cabajal explained that her mother had fallen and was now experiencing pain in her lower back and knee. Ms. Cerrato-Valladares went over to the Menjivar home and found Mrs. Menjivar lying down. She was crying and her knee was swollen. Ms. Cerato-Valladares took Mrs. Menjivar to the hospital emergency room. On the way to the hospital, the women stopped at Rouse's to report the incident and speak to the manager. The manager took the report and went out to the car to speak to Mrs. Menjivar. Ms. Cerato-Valladares testified that she pointed out to the manager that there were cigarette butts on the ramp.
Mrs. Menjivar also testified at trial. She corroborated the testimony of her daughter regarding the purpose of the shopping trip to Rouse's and the location and circumstances of the slip and fall. She further explained she was walking out of the supermarket on the handicap ramp, trying to locate her keys in her purse. She slipped and reached out for the handrail in an effort to keep from falling, but was unsuccessful. Her right leg went forward and her left knee hit the ground. She looked down and saw a cigarette butt about two inches from her shoe, which she believed caused her to slip. She stated that there were other cigarette butts and paper on the ramp. She went inside to get something for her injury and was given cotton balls, alcohol and bandages. She did not fill out a report at that time. Later, after she returned home her back was very painful. Mrs. Menjivar instructed her daughter to call her friend Yolanda (Ms. Cerrato-Valladares). The rest of her testimony corroborates that of Ms. Cerrato-Valladares regarding the condition of her back and knee, and the trip to the store to formally report the incident. Mrs. Menjivar testified that after the report was made, the women went to the hospital for treatment. The remainder of her testimony concerns the extent of her injury and treatment.
Lon Levy, the assistant manager of Rouse's, testified that he recalled the incident in which Mrs. Menjivar made a report that she slipped on a cigarette butt while walking down the handicap exit ramp. Mr. Levy accompanied Mrs. Menjivar *178 out to the scene of the slip and fall, where Mrs. Menjivar pointed to a few cigarette butts on the ground which she said caused her fall.
Mr. Levy testified that Rouse's cleans that ramp daily in the morning. He further explained that someone comes in at 5 a.m. who buffs and sweeps the floor, then cleans the bathrooms and break room. After that he goes outside and cleans the parking lot, including the handicap ramp. This usually occurs about 8 a.m. The cleaning person responsible for these duties leaves at 9 a.m. At night a crew comes in to clean up large objects left in the parking lot. Mr. Levy confirmed that the ramp on which Mrs. Menjivar slipped is swept every morning and was swept on the morning of the accident. He further testified that he personally checked the ramp that morning and found it clean.
Mr. Levy also testified that when Mrs. Menjivar first came into the store and told him of the fall, she did not want to fill out an incident report. However, she returned later in the day to fill out the report. Mr. Levy testified that the accident happened at about 9:45 a.m. at a time when the store was busy. He was running customer service at the time.
Mr. Levy testified that employees are not allowed to smoke inside of the store. There is an elevated area set up for employees to smoke outside of the store to the left of an emergency door which is not in normal use for the public. It is not in close proximity of the handicap ramp. Management checks to make sure that employees smoke only in the designated area, and Mr. Levy has never seen an employee smoke in the area where Mrs. Menjivar fell.
Contained in the record are photographs of the area introduced into the record by plaintiff. One large photo shows the ramp and the railing around it; another shows a close up view of the area below the railing on the side of the ramp. Another photo shows an area in which no obvious obstructions exist. It appears to be swept clean. The close up view does show several cigarette butts on the ground, but they are in an area under the rail, not on the actual walkway.
Defendant also introduced photos of the area of the fall and the area set aside for smoking employees.

LAW
La. R.S. 9:2800.6 provides in pertinent part as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure *179 is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
In White v. Wal-Mart Stores, Inc., 97-0393 (La.9/997), 699 So.2d 1081, the Louisiana Supreme Court explained the burden of proof imposed on a plaintiff by the above cited statute. In White, 699 So.2d at 1086 the court stated:
The statute is clear. To prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care.
This court, citing White, has also held that a plaintiff must make a showing that the condition existed for some time before the fall occurred. A simple showing that the condition existed is insufficient for a finding of liability and recovery. Hernandez v. National Tea, Inc., 98-950 (La.App. 5 Cir. 5/19/99), 734 So.2d 958.
In the case before us, plaintiff has made nothing more than a showing that she slipped on a cigarette butt. She has made no showing that the condition existed for some time before the fall which would support a finding of constructive knowledge of the condition on the part of the defendant. Therefore, we find the trial court was correct in its finding that plaintiff failed to meet her burden of proof, and in the judgment in favor of defendant. Accordingly, we affirm the judgment of the trial court and assess costs of this appeal to plaintiff.
AFFIRMED.
EDWARDS, J., dissents.
EDWARDS, J., Dissents.
I dissent from the majority, because in my opinion, Mrs. Menjivar proved her case under La. R.S. 9:2800.6. The evidence indicates that the ramp on which Mrs. Menjivar slipped was last cleaned at about 8:00 a.m., almost two hours before the accident. There was testimony that Rouse averages about 2500 customers per day, and employees smoked in the area, where there were no ashtrays. These facts, plus the evidence that there were "a few" cigarette butts on the ramp along with some other pieces of paper, indicates that the littered condition of the ramp existed for such a period of time that it would have been discovered had the supermarket exercised reasonable care in keeping it clean. Considering the amount of store traffic and the smoking habits of the employees, it is clear that the hazardous condition was foreseeable, that Rouse's had constructive knowledge of the condition, and once-a-day early morning sweeps are insufficient to keep the area safe from hazardous conditions. Therefore I would reverse the judgment of the trial court.
For these reasons, I respectfully dissent.