MARION F. EDWARDS, Chief Judge.
 

 | ¡¿Plaintiff/appellant, Merrill Zeringue (“Mrs. Zeringue”), appeals a summary judgment granted in favor of defendant/appellee, Wal-Mart Stores, Inc. d/b/a Sam’s East, Inc. (“Sam’s”), dismissing her suit for personal injury.
 

 Mrs. Zeringue urges that, on August 6, 2005, she was shopping at Sam’s and was near a checkout aisle near the front of the store. As she passed through the aisle to retrieve some boxes, she stepped on some crushed grapes on the floor, slipped, and fell, injuring herself. She alleged that the area had no cautionary safety flags or other warnings and that the danger was not visible. Mrs. Zeringue claimed that Sam’s failed to keep its aisles in a reasonably safe condition, which resulted in her injuries.
 

 Following some discovery, Sam’s moved for summary judgment, urging that Mrs. Zeringue could not show how long the grapes had been on the floor prior to her fall, so that she could not prove that Sam’s had actual or constructive knowledge of
 
 *277
 
 the existence of the hazard. Following oral argument, the trial court granted summary judgment.
 

 lain connection with its motion, Sam’s introduced Mrs. Zeringue’s deposition. She testified that, prior to the accident, she had been shopping in Sam’s for about an hour to an hour and a half. At the register, her husband asked her to get a box in which to put the groceries. This was at about noon. She was walking straight toward the exit near the first register where the boxes are stacked when she suddenly slipped and fell. She did not know why she was sliding arid did not see any warning cones. She was wearing tennis shoes. There was nothing to obstruct her view, but she was not looking down at the floor. After she fell, she saw some green grapes on the floor, some of which had been crushed. The crushed grapes appeared clear. Mrs. Zeringue had no idea how long the grapes had been on the floor and no idea how they got there. She did not notice any buggy tracks or footprints. She did not know whether any Sam’s employees knew they were there and failed to clean them up, but, after the fall, some workers did come to clean the area. Mrs. Zeringue later spoke with the manager, who told her she would be contacted.
 

 Also in the record is Mr. Zeringue’s deposition. He stated that his back was turned to his wife while he was paying, and, as he checked out, he noticed she was on the ground. A female employee was helping her up. When he looked on the floor, he saw a puddle, about a square foot, irregularly shaped and clear. In the center of the puddle were about a dozen and a half green grapes, some crushed. He thought there was a lot of liquid on the floor for so few grapes as he could see. The puddle was three to four feet from the first register. Mr. Zeringue did not know how the grapes or liquid came to be on the floor or how long they had been there.
 

 In her opposition, Mrs. Zeringue attached the deposition of Arthur Mauterer, the club manager at Sam’s. As store manager, he would conduct periodic | ¿inspections of the floor. Periodically during the course of the day, associates would go through their sections, checking the merchandise and looking for any trash or dust that needed cleaning up. Each associate is responsible for maintaining his or her area. Several times during the day, an announcement is made for a safety sweep so that “zone defense” is performed continually throughout the course of the day. A separate group of maintenance associates conducts sweeps of the entire store. In the area where the fall occurred, it would be the responsibility of the cashiers to police the area, which is considered a heavy traffic area. At midday, there is an overlap of maintenance coverage. Sam’s is not required to keep a maintenance log of when zone defense is done. However, general safety sweeps are announced on the intercom and are done every other hour beginning at 10 a.m. It was possible, but very unlikely, that the grapes had been on the floor since 10:01 a.m. There are numerous associates in the area and supervisors who would have seen and addressed the issue. If a cashier sees a spill, he would immediately clean it or call for assistance. It is Sam’s protocol to monitor the front part of the store closely. When the accident occurred, Mr. Mauterer was leaving for lunch, and Manager Cristo-bal Billot was handling the situation. Mr. Mauterer did speak to Mr. Billot, as well as to Pam Wilson, an associate who was also there. Ms. Wilson told him that Mrs. Zeringue had slipped on a grape, and it had been cleaned up. Although it is protocol to take a photograph of the scene, Ms. Wilson had already cleaned the area. Mr. Mauterer did not notice any debris or wet
 
 *278
 
 areas on the floor or on Mrs. Zeringue and had no knowledge of how long the spill had been on the ground. If there is a spill, there is no form or log to be filled out.
 

 In granting summary judgment, the trial court agreed with Sam’s counsel that there was no affirmative proof as to how long the grapes had been on the floor. |fiOn appeal, Mrs. Zeringue contends that, because there were typically nine employees in the area at the time of the fall, the store protocol was to continually sweep the area for hazards⅝ and the possibility spoken of by Mr. Mauterer — that the grapes were on the floor from 10:01 a.m. until the next inspection at 12:00 p.m. — there was a question of material fact with regard to constructive notice.
 

 Appellate courts review summary judgments de novo to determine whether summary judgment is appropriate, using the same criteria applied by trial courts.
 
 [1]
 
 An appellate court must determine whether there is any genuine issue of material fact, and whether the mover/appellant is entitled to judgment as a matter of law. The burden of proof is on the mover to make a prima facie showing that a Motion for Summary Judgment should be granted. La. C.C.P. art. 966. This burden does not require the movant to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. After the mov-ant has met this burden, it shifts to the adverse party to present evidence to the court demonstrating that there remains a genuine issue of material fact. There is no genuine issue of material fact if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.
 
 [2]
 

 The applicable law is La. R.S. 9:2800.6:
 

 A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
 

 B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition [ ^existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
 

 (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
 

 (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, pri- or to the occurrence.
 

 (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
 

 C. Definitions:
 

 (1) “Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the
 
 *279
 
 condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
 

 La. R.S. 9:2800.6(B) clearly and unambiguously requires the claimant to prove each of its three subsections with no shifting of the burden.
 
 [3]
 
 Thus, the claimant must prove that the merchant created the condition that caused the accident or had actual or constructive notice of the condition. When the plaintiff relies on constructive notice, which includes a mandatory temporal element, the plaintiff must come forward with positive evidence showing that the condition that caused the damage existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence.
 
 [4]
 
 While there was testimony relative to the existence of the grapes on the floor, a simple showing that the condition existed is insufficient for a finding of liability and recovery.
 
 [5]
 
 The presence of cashiers |7in the vicinity does not, alone, constitute constructive notice, unless Mrs. Zeringue can show that they knew, or should have known, of the existence of the condition. She has not done so, and, rather, relied on speculation. Thus, she has failed to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial regarding the temporal element of notice.
 

 Therefore, we find that Sam’s established a lack of factual support for an essential element of Mrs. Zeringue’s claim and, thereafter, Mrs. Zeringue failed to establish that she would be able to satisfy her evidentiary burden of proof at trial. Summary judgment was properly granted.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Duke v. Weber's IGA Store,
 
 01-383 (La.App. 5 Cir. 10/17/01), 800 So.2d 1002.
 

 [2]
 

 .
 
 Id.
 

 [3]
 

 .
 
 White v. Wal-Mart Stores, Inc.,
 
 97-393 (La.9/9/97), 699 So.2d 1081.
 

 [4]
 

 .
 
 Wright v. SCC Serv. Solutions, Inc.,
 
 07-219 (La.App. 5 Cir. 9/25/07), 968 So.2d 759.
 

 [5]
 

 . Menjivar v. Rouse’s Enter., L.L.C.,
 
 03-808 (La.App. 5 Cir. 12/30/03), 865 So.2d 176.