926 So.2d 617 (2006)
Kim Ruffin STRAUGHTER, Wife of/and Anthony Straughter, Individually and on Behalf of their Minor Daughter, Amami Straughter
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, John Doe, American Freightways, Inc. and/or American Freightways Corporation.
No. 05-CA-699.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2006.
*618 Ford T. Hardy, Jr., Denham Springs, Louisiana, for Plaintiffs/Appellants.
Dwayne R. McClure, New Orleans, Louisiana, for Defendant/Appellee.
John E. Galloway, Kimberly G. Anderson, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, Louisiana, for Defendants/Appellees.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Plaintiffs/appellants, Kim Ruffin Straughter, wife of and Anthony Straughter, individually and on behalf of their minor daughter, Amani Straughter, appeal a judgment of the district court dismissing their claims against defendants/appellees American Freightways (now FedEx East, Inc.) and Government Employees Insurance Company (GEICO). On a tragic note, in brief, counsel for the Straughters has informed this Court that less than ten months following trial in this matter, Mrs. Straughter passed away from causes not related to the accident herein. The record does not disclose a substitution of parties.
The Straughters filed suit against GEICO and American Freightways alleging that, on May 27, 1998, Kim Straughter was operating a Chevy Blazer, owned by Alamo Rent-A-Car, with her husband and daughter as passengers. According to the petition, while proceeding westbound in the right-hand lane of Interstate 10 approaching the George Wallace Tunnel in Mobile, Alabama, a large red and white eighteen-wheeler truck attempted to merge into their lane of travel, striking the front of their vehicle and forcing it off the road and into a barricade. It was further *619 asserted that the truck was operated by an unknown driver and owned by American Freightways. The Straughters alleged serious personal injury as a result of the accident. American Freightways was purchased by FedEx East Freight, Inc. around 2001.
At trial, Mr. Straughter testified that he is a dog breeder and, at the time of the accident, he had gone to Florida to pick up two dogs that were in a kennel in the back of the vehicle, a Chevy Blazer that the family had rented. Besides Mrs. Straughter and their daughter, a neighborhood friend, Leon Robinson, was along for the ride. On the trip home from Jacksonville, Mr. Straughter dozed off. Sometime after midnight he felt a jolt. When he awoke, Mrs. Straughter was screaming, and he stuck his arm out to brace himself as they hit the guardrail head on. They were going about 45-50 miles per hour in the right lane and went about twenty yards more before the Blazer stopped, ending up on the left side of the highway. There was smoke coming out of the hood. Mr. Straughter saw the rear trailer of an eighteen-wheeler near the front of the Blazer in the left lane. It was a white trailer with the name "American Freightways" on the back. The impact would have been in the front left-hand side of the Blazer. No one stopped. The family called the rental car company, who picked up the vehicle and replaced it with another SUV. The accident happened before reaching the Mobile Tunnel.
Mr. Straughter injured his left wrist, shoulder, and arm, as well as his neck. He saw Dr. Brinkman, and was told he had a hairline fracture in his wrist and neck spasms. He was treated for two or three months, although the pain lasted about six months.
On cross-examination, Mr. Straughter was presented with some inconsistent statements from an earlier deposition. In that deposition, he stated he felt two jolts rather than one prior to hitting the guardrail and that the accident occurred after the Mobile Tunnel. He further testified that he was involved in two other auto accidents after this one, one on November 8, 1998, as well as two accidents prior to the current action. He admitted that he never tried to contact American Freightways after the accident.
Kim Straughter testified that she, her husband, daughter, and Mr. Robinson, were on the way to Jacksonville, Florida to pick up one dog. Mr. Robinson had had some beers and was asleep in the back seat when the accident happened. It was starting to get dark, between 5:00 and 6:00 p.m. when they left Jacksonville. Because her husband had driven the entire trip there, Mrs. Straughter took over in Tallahassee and began driving. About four or five miles before reaching the tunnel in Mobile, at around 10:00 p.m., she noticed a truck coming alongside. Suddenly she felt something push and "grab hold," and she ran straight into the barricade. She saw the trailer, which was light gray illuminated with the red lettering "American Freightways." The truck came all the way over into her lane and hit the car. It felt as though there were two impacts, in the front and in the rear. The truck never stopped. When they got out of the car, the front bumper was hanging. The air bags had deployed, and the engine was smoking. They drove a short distance to a gas station and reported the accident. The police officer told them to make a short report because he was investigating a shooting at the gas station. Mrs. Straughter told him the name of the truck that ran them off the road.
Later, the towing company came and brought them a mid-size Contour to drive home. Mrs. Straughter testified that, on *620 the date of the accident, she was already totally disabled from several previous accidents. She had another auto accident since the one in question. By the time of the present accident, she had started to feel better. However, here she suffered injuries to her chin, left leg, chest, neck, and back. She had been treated by Dr. Stuart Phillips and Dr. Robert Lesser. At the time of trial, she had a steroid shot and was not hurting when she testified. However, she has ongoing back pain and, as a result of the combination of accidents, has problems sitting, standing, and walking. She has trouble swimming and horseback riding and problems doing activities with her children. She is currently in vocational rehabilitation.
Dr. Phillips suggested she have breast reduction surgery to help ease her back pain, but the operation did not relieve her back. Mrs. Straughter testified that the testimony of Dr. Laborde (infra) was a lie. He tried to make her bend over, and she stopped him right away because it was painful. According to Mrs. Straughter, Dr. Laborde never touched her.
Mrs. Straughter stated at trial that the only reasons they rented a truck for the trip was because the tires on her SUV were bad, because she didn't want wear and tear on her vehicle, and didn't like the smell of the dogs. In a recorded statement to the defendant, admitted into evidence, she stated the vehicle was rented because her truck was being repaired at the time of the accident at Guy's Body Shop. In her trial testimony, she admitted that statement was inaccurate and indicated the shop was "supposed to have been Firestone;" her statement mentioned Guy's Body Shop, because there was damage to her SUV from a previous accident. In the statement, Mrs. Straughter had said the dogs were picked up in Alabama. She testified at trial that her response involved other places where dogs had been picked up. Her statement indicated that she had cuts and bruises on her face and leg and suffered a bulging disc from her accident in 1994. According to the statement, someone came up behind them to see if they were all right, and followed them to the exit, staying until the police came. The officer talked with that person. Nowhere in her statement did she mention a Jacksonville destination.
Mrs. Straughter testified that she fell off of a horse when she was about seventeen years old and landed on her back. She received a muscle relaxer and was released. In 1993, she was in an auto accident and injured her neck, back, and shoulders. That claim was settled. In 1994, she injured her back in a boating accident, which resulted in a lawsuit. In 1995, she slipped and fell and received workers' compensation. There was another accident in April 1996, where she injured her shoulder and back and was temporarily totally disabled. In May 1997, a drunk driver hit her, causing serious injuries. An accident in October 1998, was very light, causing some stiffness and injuries to her neck and back, although her shoulder started to feel better. Her neck and back were still hurting before that latter accident. That case was settled. In November 1998, yet another accident occurred, causing injury to Mrs. Straughter's neck, back, and left leg. In May 2003, an accident causing similar injuries occurred, which was settled out of court. The accident in Mobile did cause brand new injuries to her chin, chest, and knee.
Mrs. Straughter admitted that the photos of the SUV did not show damage to the driver's side of the vehicle. She stated that she did not seek medical attention in Mobile, although Dr. Phillips' report indicated she had gone to the emergency room in Alabama. She could not account for the *621 discrepancy. Although she was in moderate pain, she stated she drove home from Mobile; later in her testimony, she indicated that she thought her husband had started driving and that she took over the wheel later. She had stated in her deposition that she had cuts from broken glass in the Blazer, but at trial, after viewing photos of the SUV, she testified that she had confused this accident with another one, and she had not been cut by glass.
Dr. James Laborde was accepted as an expert in the field of orthopedic surgery. He testified that he examined Mrs. Straughter in November 1999 and in May 2003, and reviewed her MRI's and X-rays. According to the physician, she exhibited a mild positive Wadell test, which indicates a psychological problem causing or magnifying pain. She had tenderness in her back with no spasms and had a normal neurological exam. After the initial examination, Dr. Laborde concluded that there were no objective physical impairments, but her history evidenced non-organic back and neck pain. He recommended stopping narcotic pain medication and suggested an anti-inflammatory, diet, exercise, learning coping skills for pain, and returning to work. On the second exam, there were more positive tests indicating psychological factors with her complaints, and there were inconsistencies in other tests. Mrs. Straughter has arthritis, but there was no objective evidence of permanent residual injury from the accident. She may have had some sprains, which could be painful for a few weeks. The most common source of non-organic pain is anxiety, depression, or other psychological distress. The most likely explanation for her MRI results was the aging process. A medical report admitted into evidence showed that Mrs. Straughter suffered from clinical depression.
The deposition of John Hall, the investigating officer, was admitted in lieu of his testimony. He took the report from Mrs. Straughter at a gas station. Officer Hall reviewed a copy of his report and stated that he did not visit the accident scene, but Mrs. Straughter stated that she swerved to avoid another vehicle. There were no injuries reported at that time, and, while there was an indication of damage to the right front of the vehicle, there was no notation of damage to the side. He did not observe any physical injuries of any passengers. If he had been given any information about the color or name of the eighteen-wheeler, or been informed there was contact on the side of the vehicle, he would have written it down. If there had been contact on the side of the vehicle, it would have been noted. He had no recollection of a robbery happening at the gas station on the night of the accident.
Gary Bouch of American Freightways testified in his deposition that each of the trucks run double trailers. The trailers are white with American Freightways in red on each side, and the back doors are solid red, with the name painted in white along with a slogan of some sort. After reviewing company records, Mr. Bouch could not locate any tractor trailer that would have been present at the scene of the accident in Mobile, on the night in question, although there is one route through the tunnel at 8:00 a.m. The trucks are routinely scanned as they return to the company yard. There was no reason any of the trucks would be off their respective routes, and there were no reports by drivers of any accidents at that time. Theodore, Alabama, is the Mobile center for the company, about fourteen miles from the tunnel area, and there was no reason for any of the drivers to go east, as all routes are north from there. The last driver checked out from Theodore to go home at 10:19 p.m., which meant that he would *622 have had to be at the yard approximately twenty minutes before to close out his paperwork.
In his deposition, Ernest McClean, a supervisor of operations and city dispatcher for American/FedEx in Theodore, Alabama, testified that a city driver, Sean Edwards, checked out of the Theodore facility to go home at 10:19 p.m. on the night of May 14, 1998 and other employees checked out at 9:55 p.m. and 9:45 p.m. The paperwork indicated that all these employees were working in the facility at the dock that day. There was a truck that left the facility at 9:25 p.m., but it would not have gone near the tunnel.
Dr. Stuart Phillips testified in his deposition that Mrs. Straughter was first a patient in the office in 1994, where she was treated by Dr. Louis Bogran for injuries sustained in an auto accident. She had back pain, and an MRI in 1995 revealed a herniated lumbar disc, for which she received conservative treatment. She was treated a number of times in the office for various complaints, including shoulder, left leg, and back pain. In addition to other medications, she received a cortisone injection in February 1997, which worked, although she has had recurrent problems. An accident in May, 1997 caused a new neck injury, and a recurrence of sacroiliac complaints that had cleared up prior to the accident. The diagnosis was cervical strain with a possible cervical disc. She continued with treatment for back pain for several months until June 1998, when she returned with complaints from the present accident. An MRI showed lumbrosacral disc desiccation, but the old hernia had healed. Dr. Phillips would have cleared her for light work. By November, she returned with continuing severe pain, having reported two more accidents. Dr. Phillips diagnosed an aggravation of her previous problems and did not feel she required surgery. He felt the injuries sustained by Mrs. Straughter would have aggravated her symptoms for about six months. She continued to be treated over the next several years for back and neck pain, and it was noted that she was depressed. Her continuing pain was related to her degenerative condition. In 2002, Mrs. Straughter wanted to have surgery but was told she was not a good candidate.
A medical report from Dr. Isadore Brickman of AMMS clinic, admitted into evidence, indicated that Mrs. Straughter was examined on My 27, 1998, and was found to suffer from pain in her chin, left leg, chest, low back, and neck. No acute signs were noted. She was diagnosed with a cervical sprain and a sprain of the lumbrosacral spine with possible aggravation of the herniated disc. She was given a poor prognosis and placed on full disability.
Following the presentation of the plaintiffs-appellants' case-in-chief, both GEICO and American Freightways orally moved for a "directed verdict" in their favor alleging that the Straughters failed to meet their burden of proof.
LSA-C.C.P. art. 1672(B) applies to non-jury trials. That article states that after the plaintiff has completed the presentation of his evidence, any party may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
On appeal, the Straughters complain that the trial court committed manifest error in that it was so biased in favor of GEICO and prejudiced against them as to deprive them of a fair trial. In so doing, they point to a number of remarks made *623 by the trial court in granting the involuntary dismissal.
Generally, a trial judge is presumed to be impartial; thus, a party contending that a judge did not act impartially is required to present some factual basis to support his claim and may not rely on conclusory allegations.[1] The trial court is afforded discretion in conducting a trial, but that discretion is circumscribed by considerations of justice and fairness. The trial court is generally prohibited from engaging in a pattern of judicial conduct that demonstrates prejudice to one party or partiality to the other party.[2] Improper conduct by the trial court constitutes reversible error, however, only when a review of the record as a whole reveals the conduct was so prejudicial that the complaining party was deprived of a fair trial.[3]
Without quoting the particular remarks made by the trial court in granting the involuntary dismissal, we agree that some of them were untoward, unrestrained, and unnecessary. However, based on the record on appeal, we cannot conclude that these comments made by the court prejudiced the parties' ability to enjoy a fair trial. The court based its judgment on a credibility evaluation of the Straughters' testimony.
The manifest error standard is used by an appellate court in reviewing a trial court's ruling on a Motion for Involuntary Dismissal. The appellate court must determine whether the trial judge's conclusion was reasonable, not whether it was right or wrong.[4] In order to determine whether an involuntary dismissal is appropriate pursuant to LSA-C.C.P. art. 1672(B), the trial court must determine whether the plaintiff has presented sufficient evidence to establish his claim by a preponderance of the evidence.[5] On appellate review, the grant of such motion will not be disturbed absent manifest error in a credibility determination or an error of law.[6]
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings.... However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the Court of Appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination....
But where such factors are not present and a factfinder's finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong....[7]
*624 The trial court weighed the credibility of Mr. and Mrs. Straughter when granting the motion for involuntary dismissal. We find nothing in the present case to support a finding of manifest error in this evaluation. There were significant inconsistencies in the version of events presented by Mr. and Mrs. Straughter, as well as within their testimony. Mr. Straughter testified he was asleep at the time of the first impact; Mrs. Straughter had stated in her deposition that he was awake. According to Mr. Straughter, the accident took place after midnight; Mrs. Straughter testified it was approximately 10:00 p.m. Mr. Straughter stated in his deposition that he felt two jolts but in his testimony insisted there was but one. He changed his account of where the accident took place. He stated that no one stopped to help them; she stated that someone did stop and follow them to the exit.
There were significant variations within Mrs. Straughter's story as outlined above. Perhaps most significantly, the photos of the vehicle clearly indicate that there was no damage to the driver's side of the SUV, where the two impacts from an eighteen-wheeler were allegedly suffered. There was no evidence of any American Freightways trucks in the vicinity at the time of the accident. We find that the record supports the credibility conclusion made by the trial court.
The Straughters point out that, during the trial, the court admonished their attorney to keep his "wisecracks" to himself and told Mrs. Straughter to "answer her question and do it now and stop fooling around." The latter remark was made after Mrs. Straughter was questioning the defense counsel in an argumentative manner. As to the former comment, the court's admonishment was not improper under the circumstances.
The Straughters urge in brief that, because the trial court ruled from the bench, it did not review any of the evidence submitted by them or by American Freightways. This allegation in unsupported in the record on appeal. The evidence was submitted prior to and during trial, and the transcript indicates some breaks were taken, including a lunch break. There is nothing to suggest the court did not consider all of the evidence before ruling on the matter.
After the trial court heard the evidence, it concluded that the Straughters could not meet their burden of establishing that a compensable accident occurred by a preponderance of the evidence. After review, we cannot find that the trial court's judgment granting the Motion for Involuntary Dismissal was manifestly erroneous. Accordingly, the judgment is affirmed. Costs of appeal are assessed to the plaintiffs/appellants.
AFFIRMED.
NOTES
[1] Jackson v. CSX Transp., Inc., 97-0109, p. 5 (La.App. 4 Cir. 12/23/97), 712 So.2d 514, 518 (citing Pierce v. Charity Hosp. of La., 550 So.2d 211, 213 (La.App. 4 Cir.1989), writ denied, 551 So.2d 1341 (La.1989)).
[2] Reed v. Recard, 97-2250 (La.App. 1 Cir.11/18/99), 744 So.2d 13, 16, writ denied, 98-3070 (La.02/12/99), 738 So.2d 572.
[3] Reed v. Recard, 744 So.2d at 16.
[4] Culmone v. Family Dollar Stores of La., Inc., 04-926 (La.App. 5 Cir. 1/25/05), 892 So.2d 686, writ denied, 05-0740 (La.5/6/05), 901 So.2d 1101.
[5] Id.
[6] See, CB & I Constructors, Inc. v. City of Thibodaux, 04-1133 (La.App. 1 Cir. 12/17/04), 897 So.2d 724.
[7] Johnson v. Lee, 00-78 (La.App. 5 Cir. 5/30/00), 760 So.2d 1273, 1277 (citations omitted).