930 So.2d 1015 (2006)
Sandra HERNANDEZ
v.
WAL-MART STORES, INC.
No. 05-CA-921.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 2006.
Robert J. Caluda, Stephen C. Juan, Attorneys at Law, Metairie, Louisiana, for Plaintiff/Appellant, Sandra Hernandez.
Thomas P. Anzelmo, Catherine M. Williams, Attorneys at Law, Metairie, Louisiana, for Defendant/Appellee, Wal-Mart Stores, Inc.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
In this slip and fall case plaintiff, Sandra Hernandez, appeals an adverse judgment in which the trial court granted an involuntary dismissal of plaintiff's claim after a bench trial on the merits. For reasons that follow, we affirm.
Ms. Hernandez filed this action against Wal-Mart Stores, Inc.(Wal-Mart), alleging that she was shopping at the Wal-Mart Super Center on Jefferson Highway when she slipped and fell in the produce section due to a "saturated rug," causing her to exacerbate pre-existing spine and knee problems. In due course, the matter went before the bench for a trial on the merits. At the close of plaintiff's case, defendant moved for an involuntary dismissal, which was granted by the trial court.

FACTS
At trial plaintiff, Sandra Hernandez, testified that she went to Wal-Mart on the afternoon of August 3, 2003 with a friend *1016 to shop. She was there several hours when she went to the produce section of the store. She was in the produce section about fifteen to twenty minutes before the fall. She selected some fruits and vegetables and made a trip to her basket, which was parked further away because of the crowds. Ms. Hernandez then returned to the produce section to select more items. When she walked back to her basket she slipped and fell forward, landing on her hands and knees. Ms. Hernandez testified that her pants legs and hands were wet and she noticed debris on the floor. There were little pieces of leafy material on her hands and pants. There was a "bump" in the rug; however, Ms. Hernandez could not be sure if it was there before the fall. When she attempted to get up after the fall, the rug moved. Ms. Hernandez did not recall if the floor under the rug was wet.
At the time of the fall, there was a Wal-Mart employee stocking the produce section, about six feet away from plaintiff when she fell. There was another employee nearby working in the produce section. None of the employees told Ms. Hernandez to be careful, to watch out for a wet rug or debris on the floor. Ms. Hernandez testified that she did not notice any debris or water on the floor before she fell.
Ms. Hernandez tried, but was unable to get up after the fall. Someone called the manager, who came over and told Ms. Hernandez to remain still until she could get some help. The manager sent one employee for a mop and camera. Ms. Hernandez was helped to her feet and then into a room where she was given something to wipe her hands and ice for her injured knees. Ms. Hernandez gave a statement on how the accident happened.
The remainder of the testimony offered by plaintiff related to the injuries sustained in the fall, and the restrictions on her lifestyle since the accident. Ms. Hernandez testified that she was treated for several months at the New Orleans Health Clinic and was recently discharged when her maximum level of recovery was achieved. Ms. Hernandez stated that she still has pains in her lower back extending down into her legs. She can not stand or sit too long, and walks with a limp. Before her injury, Ms. Hernandez was a babysitter. However, she can no longer engage in that work since she is unable to carry small children.
Ms. Hernandez testified she had prior surgeries on her back and neck and was taking medication for pain in her neck, shoulders, hand and back. However, she did not have a high level of pain, or radiating leg pain until after the fall.
The record also contains the deposition of Sheila Jefferson, a friend of Ms. Hernandez who was shopping with her at the time of the fall. Ms. Jefferson stated that they arrived at about five in the afternoon and were shopping for about two hours when Ms. Hernandez fell. Ms. Hernandez went over to the produce section while Ms. Jefferson was one aisle over with the basket. Ms. Hernandez came over to the basket to put some items in and then went back to get more.
Ms. Jefferson did not actually witness the fall. She explained that she had her one-year-old godchild in the basket and she was playing with the baby while she waited for Ms. Hernandez to return. She heard someone say "ooh a lady fell," she looked over and saw Ms. Hernandez sitting on a rug on the floor. There were a lot of people standing around her, and there was water all over the floor. Ms. Jefferson testified that she had not been on the aisle where Ms. Hernandez fell before the accident, so she did not know the condition of the floor before the fall. Ms. Jefferson recalled that Ms. Hernandez had produce in her hand, but could not *1017 remember whether it was packaged or loose. Ms. Jefferson testified that there was water on the floor from the misting system around the mat, although in later questioning she admitted she did not see water from the mister spraying the floor. There was a buckle in the mat and Ms. Jefferson stated that she could see there was water under the mat also. However, she could not be sure whether the buckle in the mat and the water on the floor were there before the accident.
The assistant manager came and asked Ms. Jefferson to accompany Ms. Hernandez to complete some paperwork. After that was completed, Ms. Jefferson drove Ms. Hernandez home. The next day Ms. Jefferson called to check on Ms. Hernandez' condition and was told Ms. Hernandez had leg pain.
Plaintiff also called Wal-Mart general manager, John McFadden, as a witness. Although he was not on duty the day of Ms. Hernandez's fall, Mr. McFadden offered testimony regarding the store's policy of holding safety meetings on a weekly basis to discuss customer accidents and how to prevent them in the future. Copies of notes from those loss prevention meetings were introduced into the record and show that customer accidents were "out of control." Ways to prevent accidents, including having managers take hourly tours to look for hazards and hiring more people to keep the store clean, were discussed at these meetings. The safety meeting reports are general and do not specifically relate to the produce department and the mister.
Mr. McFadden stated that the store has maintenance associates who keep debris off the floor, but could not recall if more were hired after that meeting. Mr. McFadden testified that it is the duty of every store associate to look for hazards at all times, and to pick up any debris that falls to the floor.
He further testified that the produce section is equipped with a mister system that mists the fresh produce with water. The system covers a portion of the produce section that is about sixteen feet long. That area is covered with rubber floor mats placed over a non-slip tile surface. Mr. McFadden testified that he has never known these rugs to buckle or crease before this incident. Further, he stated the mister is directed on the produce and does not mist the customers or the floor, although at times customers picking up produce will drip water onto the rug.
Mr. McFadden stated that plaintiff's fall happened on a Sunday, which is the busiest day of the week for Wal-Mart. He further admitted that Wal-Mart employees should be aware that the rugs could be wet. However, Mr. McFadden again reminded the court that he was not present on the day of the accident, so he could not testify as to the actual conditions at the time of the fall.
Dr. Barbara Wizer, a board certified neurologist at the New Orleans Uptown Health Clinic, testified at trial. Dr. Wizer stated that Ms. Hernandez first came to the clinic on August 8, 2003. At that time she was experiencing pain in her knees, hands and lower back as a result of a fall at Wal-Mart. Ms. Hernandez' medical records show prior low back surgeries and a cervical fusion. The initial diagnosis was contusions to the knees, shins and hands, and lumbar muscle strain. Ms. Hernandez was treated with moist heat therapy, ultrasound and electrical stimulation. Ms. Hernandez' subsequent complaints of pain radiating into the buttocks and down the leg is indicative of some irritation or pressure on one or more of the nerve roots coming out of the lower back and going down into the legs. Ms. Hernandez continued physical therapy and was given Vicodin for pain. Although Ms. Hernandez had some fluctuations, *1018 generally by January of 2004 she showed some improvement. In March of 2004, the symptoms from the fall at Wal-Mart were resolved and Ms. Hernandez was left with her chronic problems. She was referred to a neurosurgeon for evaluation.
At the time of trial, Dr. Wizer stated that she was no longer treating Ms. Hernandez for her injuries; however, she had seen her a few weeks earlier. Ms. Hernandez was experiencing difficulty in performing normal activities such as bending, stooping, getting in and out of a car, and stepping up onto a bus or streetcar. Ms. Hernandez, a fifty-seven year-old woman who was a babysitter by trade, now has difficulty taking care of young children, cleaning her house, or sitting or standing for a long time. Dr. Wizer opined that Ms. Hernandez may have some improvement, depending on how aggressively she pursues the exercise program prescribed for her.
In connection with the diagnosis at the New Orleans Uptown Health Clinic, Ms. Hernandez was given an MRI. That test showed degenerative disc disease at multiple levers, from L3-L4 down through L5-S1, along with degenerative facet joint disease through those same levels. Dr. Wizer testified that the MRI showed three bulging discs; but there was no way to know whether these bulges pre-dated the accident at Wal-Mart.
Dr. Kenneth Vogel testified that he treated Ms. Hernandez since 1978 for lumbar problems and discharged her on March 12, 1991. During the course of that treatment, Ms. Hernandez had three back surgeries. Ms. Hernandez returned in June of 2004 for an evaluation of low back and bilateral leg pain. When Ms. Hernandez related the reason for the visit, Dr. Vogel conducted an MRI. From that test he found evidence of degenerative disc disease. He further explained that at T12 and L1, and at L2 and L3 the discs are relatively normal. However, at L3-4 and at L4-5 there's a diffuse bulge of the annulus. Dr. Vogel could not give a specific cause for this abnormal condition. He did state that an individual with Ms. Hernandez' medical record would be predisposed to injury from a fall.

LAW
La. C.C.P. article 1672(B) provides that:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In order to determine whether an involuntary dismissal is appropriate pursuant to La. C.C.P. art 1672(B), the trial court must determine whether the plaintiff has presented sufficient evidence to establish his claim by a preponderance of the evidence. Straughter v. Government Employees Ins. Co., 05-699 (La.App. 5 Cir. 3/14/06), 926 So.2d 617, 623. In our review of the trial court's decision to grant the motion for involuntary dismissal, this court must use the manifest error standard. On appellate review, the grant of such motion will not be disturbed absent manifest error in a credibility determination or an error of law. Id.
La. R.S. 9:2800.6 provides in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passage-ways, *1019 and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
In brief to this court, plaintiff asserts the trial court erred in finding she did not meet her burden of proof considering the testimony of Mr. McFadden and the presentation of the safety reports showing a concern for slip and fall accidents and the need for more maintenance associates to keep the floor clean. Plaintiff argues that evidence demonstrates that Wal-Mart had constructive notice of the condition of the floor where the accident occurred.
La. R.S. 9:2800.6 C(1) defines constructive notice as follows:
"Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
That portion of the statute has been interpreted by our Supreme Court;
The definition is likewise clear and unambiguous. There is a temporal element included: "such a period of time..." The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall. A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, 1084
This court has followed White in holding that a simple showing that the condition existed is insufficient for a finding of liability and recovery. A plaintiff must make a showing that the condition existed for some time before the fall occurred. Menjivar v. Rouse's Enterprises, L.L.C., 03-0808 (La.App. 5 Cir. 12/30/03), 865 So.2d 176. Further, under the current law plaintiff cannot rely on the safety reports for an inference of constructive notice that the floor was wet, or had debris before Ms. Hernandez fell, without some showing of how long the specific condition existed.
Neither Ms. Hernandez nor Ms. Jefferson noticed any debris or water on the floor before the fall. Although Mr. McFadden testified that customers sometimes drip water from wet produce, he also *1020 testified that the mister does not spray the floor or the customers, and that a rug is in place to absorb any water that drips. Photos contained in the record show very little debris and no water on the floor. Further, plaintiff did not present evidence from either of the two employees in the area that they were aware of any water or debris on the floor. Given the evidence presented at trial, we cannot find the trial court's ruling was manifestly erroneous. Accordingly, we affirm the judgment from which this appeal was taken.
AFFIRMED.
DALEY, J., concurs with reasons.
DALEY, J. Concurring.
I concur in the result reached by the majority, but for different reasons. My reading of the testimony shows that plaintiff's deposition and trial testimony regarding the facts of her accident varied widely, and I, therefore, agree with the trial court that she failed to bear her burden of proof to establish that a condition or defect in the Wal-Mart premises existed. I would affirm on these grounds.