ROBERT A CHAISSON, Judge.
|2In this case involving an automobile accident, Elvin 0. Ramos, appeals from a judgment of the trial court rendered in favor of USAgeneies Casualty Insurance Company, dismissing his lawsuit. For the reasons that follow, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

Plaintiff, Elvin 0. Ramos, alleged in his petition that on February 25, 2011, he parked his car, a 2001 Honda Civic, between the sidewalk and the street of his house on Alton Street in Jefferson Parish. As he was still sitting in his car with the door partially open, a white 1996 Ford E-150 van passed him and pulled all the way up into the adjoining driveway. In an apparent attempt to turn around, the white van backed out of the driveway and hit the left side of Mr. Ramos’s car. The impact caused the partially open door to close on Mr. Ramos’s left arm. A few days later, Mr. Ramos started to feel soreness and pain in his left arm. On March 2, 2011, Mr. Ramos went to a doctor with complaints of pain to his left shoulder, left hip/thigh, neck, and back. He thereafter underwent treatment at Physician’s Total Rehabilitation for approximately five to six months.
| aAs a result of the damages allegedly sustained in the automobile accident, Mr. Ramos filed suit against USAgeneies Casualty Insurance Company, the insurer of the Ford van; Sixto Tolentino, the owner of the vehicle; and Luis Serrano, the driver of the vehicle. Mr. Tolentino and Mr. Serrano were dismissed from the proceed *340 ings, and the matter proceeded to a judge trial against USAgencies on April 28, 2012. After considering the evidence presented, the trial judge rendered judgment in favor of USAgencies and against Mr. Ramos. The trial judge specifically found that the plaintiff failed to carry his legal burden of proof that an accident and/or injury occurred; that the accident alleged did not occur and, if it did occur, it was staged; and that the plaintiff participated in a systematic, intentional fraud with his testimony constituting insulting perjury upon the Court.[1] A written judgment to that effect was signed on May 3, 2012.
Mr. Ramos now appeals. He basically raises two issues. First, Mr. Ramos contends that the trial court erred when it permitted evidence of his immigration status, as this information was irrelevant and prejudicial to him. Second, Mr. Ramos challenges the factual findings of the trial court.

EVIDENCE OF PLAINTIFF’S IMMIGRATION STATUS

In his appellate brief, Mr. Ramos contends that the trial court erred in permitting evidence of his illegal status in this country. Pursuant to questioning by defense counsel, Mr. Ramos stated that he was born in Honduras. Defense counsel then asked Mr. Ramos his status in the United States. Mr. Ramos’s attorney objected on the basis of relevancy. In response to this objection, defense counsel replied, “I think it is relevant if someone will break the law to personally benefit l4it’s an issue as it is in this case.” The court thereafter allowed the question regarding Mr. Ramos’s status in the United States. Mr. Ramos responded that he is “illegal.”
Mr. Ramos now contends that the trial court erred in allowing evidence of his immigration status because it had no bearing on his right to recover compensation and further had no bearing on his credibility. Mr. Ramos asserts that the improper admission of this evidence prejudiced the trial court against him and rendered it impossible for the trial court to make an impartial determination; therefore, the trial was tainted by the admission of this irrelevant evidence, and the judgment must be reversed. We find no merit to this argument.
“Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. art. 401. Whether evidence is relevant is within the sound discretion of the trial court and an appellate court will not disturb that ruling in the absence of clear abuse of that discretion. Kim v. Kim, 07-318 (La.App. 5 Cir. 10/30/07), 970 So.2d 1158, 1163.
We first note that the complained of evidence does not appear relevant to the determination of Mr. Ramos’s case. However, even if the trial court erred in admitting it as relevant, it was harmless error because there is no indication in the record that the trial court was biased against Mr. Ramos based on this evidence.
*341 This case was tried before a judge rather than before a jury. A trial judge, unlike a jury, is well versed in the rules of evidence, and is, therefore, trained to give the appropriate weight to evidence and to evaluate evidence without bias. Raiford v. U.S. Industries/Ames Lawn & Garden Tools, 05-0815 (La.App. 4 Cir. 5/3/06), 929 So.2d 288, 291-92, writ denied, 06-1615 (La.10/13/06), 939 So.2d 366. Generally, a trial judge is presumed to be impartial; thus, a party contending that a judge did not act impartially is required to present some factual basis to support his claim and may not rely on conclusory allegations. Straughter v. Government Employees Ins. Co., 05-699 (La.App. 5 Cir. 3/14/06), 926 So.2d 617, 623.
In the present case, we find that Mr. Ramos failed to prove that the trial judge did not act impartially because of Mr. Ramos’s immigration status. During cross-examination of Mr. Ramos, there was only one question asked regarding his immigration status, and the issue of immigration was never raised again. In his appellate brief, Mr. Ramos makes conclusory allegations that after this question, the trial judge became biased as is evidenced by the trial court’s holding Mr. Ramos in contempt of court based on his finding that Mr. Ramos committed fraud and perjury. Mr. Ramos has failed to present any factual basis for his claim other than an adverse judgment. From the record, it is clear that the trial court’s ruling was not based on Mr. Ramos’s immigration status, but rather on his belief that Mr. Ramos was not credible due to the inconsistencies in his testimony. In fact, at a post-trial hearing, Mr. Ramos’s attorney conceded that defense counsel did a very effective job of calling into question his client’s credibility and further accepted the Court’s finding that Mr. Ramos was not credible. Accordingly, we find no merit to Mr. Ramos’s argument that the trial court was biased against him because of his immigration status.

FACTUAL DETERMINATIONS OF TRIAL COURT

On appeal, Mr. Ramos also challenges the factual determinations by the trial court. Specifically, Mr. Ramos contends that the trial court erred in finding that he failed to carry his legal burden of proof that an accident and/or injury occurred; that the accident alleged did not occur and, if it did occur, it was staged; and that he | (¡participated in a systematic, intentional fraud with his testimony constituting insulting perjury upon the Court.
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Credibility is a factual determination that cannot be set aside without a finding of manifest error. Twiner v. Dinvaut, 11-854 (La.App. 5 Cir. 3/13/12), 90 So.3d 1107, 1112.
In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test. First, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court. Second, the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993); Mai Vu v. Artis, 09-637 (La.App. 5 Cir. 12/29/09), 30 So.3d 140, 143.
Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous. Where the factfinder’s conclusions are based on determinations regarding the credibility of the witnesses, the manifest error standard demands great deference *342 to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESGO, 549 So.2d at 844; Aleman v. Allstate Ins. Co., 04-948 (La.App. 5 Cir. 1/11/05), 894 So.2d 382, 384.
Mr. Ramos was the only witness to testify at trial. According to his trial testimony, on February 25, 2011, he parked his car, a 2001 Honda Civic, between the sidewalk and the street of his house on Alton Street in Jefferson Parish. As he was still sitting in his car with the door partially open, a white 1996 Ford E-150 |7van passed him and pulled all the way up into the adjoining driveway. In an apparent attempt to turn around, the white van backed out of the driveway and hit the left side of Mr. Ramos’s car. The impact caused the partially open door to close on Mr. Ramos’s left arm. Mr. Ramos claimed that the corner of the passenger bumper side of the other vehicle made contact with his vehicle causing damage “on the left side of the door all the way down to the back tire.”
After the impact, the driver of the other vehicle, Luis Serrano, got out of the car. Although they exchanged insurance information, the two men decided not to call the police because neither one had a driver’s license. During his testimony, Mr. Ramos admitted that he knew both the driver, Mr. Serrano, and the owner of the van, Mr. Sixto Tolentino, because he had actually sold the van that hit his car to Mr. Tolenti-no, who lived with Mr. Serrano.
During his trial testimony, Mr. Ramos admitted that he had been driving the vehicle with no license prior to the accident. On cross-examination, defense counsel asked Mr. Ramos if he had originally told USAgencies after the accident that his vehicle was parked in a parking lot. Mr. Ramos answered that there may have been some misunderstanding when he spoke to them, but claimed that he told the representative from the insurance company that he did not call the police because his license was expired at the time and the other gentleman did not have a license either. When confronted with his original statement that his vehicle was parked in a parking lot at the time of the accident, Mr. Ramos claimed that there was some confusion and that he did not say that.
When asked about his driver’s license, Mr. Ramos testified that he does not have and has never had a Louisiana driver’s license. He admitted that he previously had a driver’s license from the State of Washington, although he has never lived in that state. He claimed that he obtained the Washington license | ^because he had an opportunity to go work in Washington, but the work never came through and he did not move there. Mr. Ramos also testified that the expired Washington license was taken away from him in Alabama by a police officer who stopped him, and he was not able to get another license here. With regard to the vehicle involved in the accident, he claimed that when he bought this car for himself, the insurance company had the previous information from his driving records and his license in the past, and therefore, he did not have to present them with a license.
At trial, Mr. Ramos also testified about the property damage to his car. He claimed that as a result of this accident, his car was damaged “on the left side of the door all the way down to the back tire.” During his testimony, he admitted that when he purchased the Honda, it had damage similar to the damage that he claimed happened in the instant accident. Although Mr. Ramos claimed that he had repaired the original damage to the vehi- *343 ele, he had no paperwork to prove the repairs.
After the accident, Mr. Ramos submitted to USAgencies a property damage claim for $4,385.15. At trial, Mr. Ramos admitted that the estimate, which amount was also provided in his answers to interrogatories, was actually greater than the amount of damages the car sustained in the accident. Mr. Ramos explained that this amount did not reflect the correct estimate, but rather reflected an estimate for repairs to the whole vehicle. When defense counsel showed him an estimate of his car made by Clean Fleet on behalf of Geico on April 7, 2011, reflecting this amount, Mr. Ramos said that he never made a claim with Geico for the damage and that he had given someone else permission to take his car to that place to get an estimate.
|sWith regard to his injuries, Mr. Ramos testified that he started to feel sore a few days after the accident and sought medical treatment on March 2, 2011. At trial, plaintiff testified that the door of his car closed on his left arm and that as a result, he suffered pain to his left shoulder, left hip/thigh, neck, and back. Mr. Ramos thereafter underwent treatment at Physician’s Total Rehabilitation for approximately five to six months. During the course of his treatment, plaintiff was instructed on each visit to fill out a pain diagram referring to parts of his body that were injured. When confronted with inconsistencies on the diagrams as to his pain, Mr. Ramos explained that he did not initially understand how to fill out the forms.
During his testimony, Mr. Ramos admitted that this is the second time he has been involved in an accident in front of his house and that he has had previous property damage claims. On redirect examination, Mr. Ramos testified that this accident really happened and that he does not stage or fake accidents to make property damage claims.
In finding that Mr. Ramos had not met his burden of proof, the trial court considered the testimony and evidence presented and found that Mr. Ramos was not credible. He noted the various inconsistencies in Mr. Ramos’s testimony relating to the accident, his claims for property damage, his claim for personal injuries, and his supposed language barrier. Based on these inconsistencies the trial court stated his belief that an accident did not occur and that even if it did, he did not believe that Mr. Ramos was injured as a result of the accident. He also expressed his belief that this was systematic intentional fraud. Considering the testimony and evidence in this matter, we cannot say that the trial court’s factual determinations were manifestly erroneous or clearly wrong.
1 Accordingly, for the reasons set forth herein, the judgment of the trial court in favor of USAgencies is affirmed. The costs of this appeal are assessed against the appellant.

AFFIRMED.

. The trial court also found the plaintiff in direct contempt of court and sentenced him to 90 days in prison. Pursuant to a writ application filed by Mr. Ramos, this Court, on April 30, 2012, vacated the trial court's ruling that held plaintiff in direct contempt of court. This Court stated, "We find neither the Louisiana Code of Civil Procedure articles governing contempt nor the jurisprudence allow for a finding of direct contempt on the basis of false testimony allegedly constituting fraud.” Elvin Ramos v. USAgencies Casualty Insurance Company, Inc., 12-377 (La.App. 5 Cir. 4/30/12) (unpublished writ disposition).