# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-697


**LARRY S. TURNER**

**VERSUS**

**TIMOTHY SHANE TURNER**


**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, DOCKET NO. C-28504
HONORABLE WARREN D. WILLETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Van H. Kyzar, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.


**AFFIRMED.**

Donald R. Wilson
Wilson and Wilson
P. O. Box 1346
Jena, Louisiana 71342
(318) 992-2104
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    Larry S. Turner

Kenneth A. Doggett, Jr.
Attorney at Law
1100 Martin Luther King Drive
P. O. Drawer 13498
Alexandria, Louisiana 71315-3498
(318) 487-4251
**COUNSEL FOR DEFENDANT/APPELLEE:**
    Timothy Shane Turner

**PERRY, Judge.**

This case involves an action to revoke a donation inter vivos of immovable property for the alleged ingratitude of the donee. After the close of the petitioner's case, the trial court granted the donee's motion for involuntary dismissal, finding no evidence to support the revocation action. For the following reasons, we affirm the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

Timothy Turner ("Timothy") is one of three sons born to Larry S. Turner ("Larry") and his first wife, Nancy Jo ("Nancy"). Larry and Nancy were divorced on June 13, 2003. Larry then married Judy Marie Rogers ("Judy"). On May 14, 2018, while married to Judy, Larry donated approximately eighteen acres of his separate property in Grant Parish to Timothy but reserved a lifetime usufruct of the property. In June 2020, the marriage of Larry and Judy ended in divorce. Approximately one month later, Larry married Linda Turner ("Linda").

Several years later, on July 13, 2023, Larry sent a letter to Timothy attaching a new written agreement which reaffirmed Larry's lifetime usufruct on the donated property and further provided a lifetime usufruct to Linda. Timothy refused to sign the new agreement.

Shortly thereafter, on November 8, 2023, Larry filed a petition to revoke his inter vivos donation to Timothy. Larry based this petition on La.Civ.Code art. 1556, alleging Timothy's ingratitude in the following particulars: (a) Timothy has had no contact with Larry since the donation was made; (b) Timothy has refused to permit Larry to see and visit with his two grandchildren and has not visited Larry at his home; (c) Timothy unreasonably refused to extend the existing usufruct in Larry's favor to Linda; and (d) Timothy's refusal to extend the lifetime usufruct to Linda

has sorely aggrieved Larry and constitutes cruel treatment as provided in La.Civ.Code arts. 1556 and 1557.

After Timothy answered Larry's petition denying the various allegations, this matter proceeded to a judge trial where several witnesses testified. At the conclusion of Larry's case in chief, the trial court granted Timothy's motion for involuntary dismissal for failure to prove the grounds necessary to revoke the donation. Larry then perfected this appeal.

## ASSIGNMENT OF ERROR

Larry contends that the trial court erred as a matter of law in including and adding the element of illegality to proof of "cruel treatment" sufficient to support the revocation of a donation for ingratitude pursuant to the provisions of La.Civ.Code art. 1557.

## APPELLANT'S ARGUMENT

Larry contends that the judgment of the trial court in involuntarily dismissing his suit is erroneous and requires this court to conduct a de novo review because the trial court included "illegality" as an element of proof to revoke the donation. He further argues that upon a correct application of La.Civ.Code art. 1557, the evidence created a prima facie case entitling him to revoke the 2018 donation to Timothy. In support of his argument that his son cruelly treated and grievously injured him, Larry relies on the fact that Timothy's refusal to modify the usufruct to include Linda hurt him badly.

## APPELLEE'S POSITION

From the outset, Timothy argues that de novo review is not appropriate because the trial court did not impose "illegality" as an element of proof to revoke a donation inter vivos. Instead, he asserts that the trial court simply ruled that

Timothy's refusal to extend the usufruct to Linda, a woman Larry married two years after the donation to Timothy, does not equate to ingratitude sufficient to revoke a donation.

Beyond that, Timothy points out that the trial court reviewed the allegations of Larry's petition and found no support that: (a) Timothy had no contact with Larry since the donation; and (b) Larry's two grandchildren, ages nineteen and twenty, were not permitted to have contact with him. Timothy further argues that his refusal to extend the usufruct to Linda was not personal to Larry and cannot be grounds for cruel treatment. Additionally, even if this court were to find that Timothy's refusal to sign the extension of the usufruct was personal to Larry, it was not so serious to constitute cruel treatment under the law and jurisprudence. Moreover, contrary to Larry's assertion that cruel treatment is a subjective determination, the jurisprudence is void of any support for that contention. Timothy argues that accepting Larry's argument would broaden the limiting language of La.Civ.Code arts. 1556 and 1557 to include instances where the donor could seek revocation by simply telling the donee that the donee's actions hurt his feelings.

## REVOCATION OF DONATION INTER VIVOS

A donation inter vivos is a contract by which the donor gratuitously divests himself, at present and irrevocably, of the thing given in favor of the donee who accepts it. La.Civ.Code art. 1468. "Louisiana Civil Code Article 1556 establishes revocation as an exception to the general rule established in La.Civ.Code art. 1468[.]" *Broussard v. Ave Maria Rosary & Cenacle, Inc.*, 21-508, p. 10 (La.App. 3 Cir. 6/1/22), 340 So.3d 1204, 1213. Specifically, in *Faulk v. Richoux*, 24-112, p. 7 (La.App. 3 Cir. 11/6/24), 397 So.3d 445, 451, this court stated:

[Louisiana Civil Code Article] 1556 provides exceptions to the irrevocability of inter vivos donations, one of which allows a donor to revoke a donation inter vivos if the donee exhibits ingratitude toward the donor. Revocation for ingratitude is limited to situations where the donee attempted to take the life of the donor or is guilty of "cruel treatment, crimes, or grievous injuries" toward the donor. La.Civ.Code art. 1557.

Generally, "'grievous injuries' sufficient to revoke a donation [inter vivos] has been defined as any act 'naturally offensive' to the donor." La.Civ.Code art. 1557, Comment (b).; *see also Faulk*, 397 So.3d 445. Moreover, under La.Civ.Code art. 1557, an act of the donee that is offensive to the donor is not to be considered a ground for revocation unless the offense is serious. Consider for example, *Perry v. Perry*, 507 So.2d 881 (La.App. 4 Cir.), *writ denied*, 512 So.2d 465 (La.1987) (directing the sheriff to seize personal property of the donor/parents); *Spruiell v. Ludwig*, 568 So.2d 133 (La.App. 5 Cir. 1990), *writ denied*, 573 So.2d 1117 (La.1991) (accusing the donor/parents as being involved in racketeering activities and that the donor/mother was a crooked thief); and *Sanders v. Sanders*, 33,865 (La.App. 2 Cir. 9/27/00), 768 So.2d 739 (denying that the donor was his father and telling the donor that he wished he would die). "[W]hether a donee has committed a 'grievous injury' upon a donor depends heavily upon the facts and circumstances specific to the case." *Erikson v. Feller*, 04-1033, p. 7 (La.App. 3 Cir. 12/8/04), 889 So.2d 430, 434. Finally, because La.Civ.Code art. 1557 provides an exception to the general rule stated in La.Civ.Code art. 1556, it must be strictly construed. *Faulk*, 397 So.3d 445.

**INVOLUNTARY DISMISSAL**

An involuntary dismissal may be granted by the trial court pursuant to La.Code Civ.P. art. 1672(B), which provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not

granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Although the trial court is given much discretion in granting a motion for involuntary dismissal, its decision to grant the motion is generally reviewed pursuant to the manifest error standard of review. *Touchet v. Hampton*, 06-1120 (La.App. 3 Cir. 2/7/07), 950 So.2d 895. "When evaluating a motion for involuntary dismissal, the trial court must consider all the evidence, without any special inferences in favor of the opponent of the motion, and grant the dismissal if the plaintiff has not established proof by a preponderance of the evidence." *Smith v. Schumpert*, 48,126, p. 3 (La.App. 2 Cir. 6/26/13), 117 So.3d 315, 318; *see also Trahan v. Acadiana Mall of Del.*, 14-232 (La.App. 3 Cir. 10/1/14), 149 So.3d 359. Likewise, a trial court has authority to weigh evidence and assess credibility in a motion for involuntary dismissal. *Straughter v. Gov't Emp. Ins. Co.*, 05-699 (La.App. 5 Cir. 3/14/96), 926 So.2d 617; *see also Scarborough v. Ybanez*, 09-1324 (La.App. 3 Cir. 4/7/10) (unpublished opinion).

It is well-established that appellate courts review a trial court's findings of fact to determine whether those findings constitute "manifest error" or if they are "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). If the trial court's findings of fact are not manifestly erroneous or clearly wrong, we cannot reverse them. *Id*. On review, if there is a "conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id*. Trial court findings based on credibility determinations must be given "great deference" because "only the factfinder can be aware of the variations

in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id*.

## ANALYSIS

Although Larry acknowledges that appellate courts generally review the granting of a motion for involuntary dismissal using the manifest error standard, he contends that this court should review this matter de novo because the trial court erred as a matter of law in its application of La.Civ.Code art. 1557. In particular, Larry argues that the trial court impermissibly included "illegality" as an element of proof sufficient to support the revocation of a donation under La.Civ.Code art. 1557. Under his reasoning, Larry suggests that the trial court stated that an act which is legal cannot be "cruel" within the purview of the article. Thus, he concludes that just because an act is legal does not mean it cannot also be cruel. For the following reasons, we find no merit to Larry's contention.

Larry's argument is based on the following oral reasons for judgment spoken by the trial court:

> The other reason I encouraged [the parties to settle before the trial began] is because, even if you prove what you said you were going to prove, I didn't think you could win. And I think you made a bad decision in 2018 to donate the property to your son.
>
> . . . .
>
> [You and your] new wife, you're both working together to improve your home, I understand all those changes. But that doesn't mean that your son has to change the deal. Morally, should he have? That's not for me to decide. Legally, he didn't have to. Legally, he didn't have to change the deal from 2018. And I don't find that his refusal to change the deal constitutes cruel treatment to you[.]

After reviewing the trial court's oral reasons and Larry's argument, it is evident that the trial court was not inserting a new element of proof. Rather, the trial court was simply stating that Timothy's refusal to sign the agreement Larry submitted to him

did not alone constitute "cruel treatment, crimes, or grievous injuries" toward the donor. Therefore, we will review the trial court's judgment for manifest error.

The record shows that the trial court heard conflicting testimony about Timothy's lack of contact with his father as well as about whether Timothy prevented his children from contacting their grandfather. After hearing the evidence Larry presented, including Timothy's testimony, the trial court resolved these questions against Larry and in favor of Timothy. These credibility determinations of the trial court will not be disturbed on appeal because we find its evaluation of the testimony reasonable and fully supported by the record.

We now turn to the trial court's determination that Timothy's actions in refusing to extend the lifetime usufruct to Linda did not constitute cruel treatment or grievous injury. After reviewing the evidence, we find that Timothy's decision to not extend the lifetime usufruct to Linda simply showed him exercising his legal right as the donee. The exercise of a donee's legal right does not demonstrate such cruel treatment or grievous injury as to warrant the revocation of the donation made to him. *See Watts v. Watts*, 17-369 (La.App. 1 Cir. 12/29/17), 241 So.3d 330, *writ denied*, 18-185 (La. 3/23/18), 239 So.3d 294 (holding that the donee's pursuit of a divorce from his donor/wife on a no fault basis was a legal remedy available to him and did not show grievous injury as a matter of law). We understand Larry's emotional reaction to Timothy's decision and his moral disappointment in Timothy's actions. However, feelings of emotional distress or perceived moral wrongs alone are insufficient to justify the revocation of a donation. *See Didier v. Simmons*, 19-1100 (La.App. 1 Cir. 5/11/20), 312 So.3d 279, *writ denied*, 20-700 (La. 9/29/20), 301 So.3d 1162 (granting the defendant son-in-law's exception of no cause of action against the plaintiff in-laws who sought to revoke donations made to him; in so

ruling the court found that even though the son-in-law had an affair during his marriage to their daughter, lied to them and their daughter about the affair, humiliated and embarrassed them, and betrayed their trust, those actions alone did not constitute cruel treatment); *see also Succession of Plunkett*, 213 So.2d 793 (La.App. 2 Cir. 1968) (holding that the husband's cohabitation with another woman during his marriage reflected upon his moral character and did not constitute ingratitude to revoke a testamentary disposition[1]).

After carefully reviewing the evidence presented in Larry's case in chief, we find the trial court was not manifestly erroneous in its conclusion that the evidence failed to show Timothy's actions constituted cruel treatment or grievous injuries sufficient to establish a prima facie case for revocation. Therefore, we find the trial court correctly granted Timothy's motion for involuntary dismissal of Larry's petition to revoke the inter vivos donation and properly dismissed Larry's action for revocation with prejudice.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment. Costs of the appeal are assessed to Larry S. Turner.

**AFFIRMED.**

---

[1] When *Plunkett* was tried and decided on appeal, former La.Civ.Code art. 1710 (1870) allowed revocation of a testamentary disposition for the same causes which were sufficient to revoke an inter vivos donation, namely grievous injury or ingratitude.