STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-232


WILSON J. TRAHAN

VERSUS

ACADIANA MALL OF DELAWARE, ET AL.



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20106777
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and John E. Conery, Judges.


REVERSED AND REMANDED.


Conery, J., concurs in the result for the reasons assigned.

Christopher T. Castro
Galloway Jefcoat, L.L.P.
P. O. Box 61550
Lafayette, LA 70596-1550
(337) 984-8020
COUNSEL FOR PLAINTIFF/APPELLANT:
    Wilson J. Trahan

**Jean Ann Billeaud**
**Elizabeth A. Hunt**
**Preis & Roy, PLC**
**P.O. Drawer 94-C**
**Lafayette, LA 70509**
**(337) 237-6062**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Acadiana Mall of Delaware CMBS, LLC;**
    **ERMC III Property Management Company, LLC; and**
    **ERMC II, LP**

**PETERS, J.**

The plaintiff, Wilson J. Trahan, appeals a trial court judgment granting an involuntary dismissal of his suit for damages against the defendants, Acadiana Mall CMBS, LLC; ERMC III Property Management Company, LLC; and ERMC II, LP.  For the following reasons, we reverse the trial court judgment and remand the matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

This litigation arises from a July 21, 2010 accident which occurred at the Acadiana Mall shopping center in Lafayette, Louisiana.  While attempting to enter the mall, Mr. Trahan fell and sustained a closed fracture of his right fibula.  He brought suit against the named defendants as the owners and/or operators of the mall facility (hereinafter collectively referred to as "Acadiana Mall") seeking to recover damages for his injuries.  The matter proceeded to a trial on the merits, and, after Mr. Trahan rested his case, Acadiana Mall moved for an involuntary dismissal pursuant to La.Code Civ.P. art. 1672(B).  The trial court granted the motion and, after a written judgment was signed dismissing Mr. Trahan's claims, he perfected this appeal.

Mr. Trahan testified at trial that he arrived at the mall at approximately 9:30 a.m. on July 21, 2013, intending to walk inside the mall premises for exercise. Because the outside temperature was already approaching ninety degrees Fahrenheit, he parked his vehicle in a shady area and proceeded on foot across the parking lot and roadway that ran adjacent to the mall structure.  He stepped onto the sidewalk,[1] which lies adjacent to the mall building and extends around the mall perimeter, and began walking toward the mall entrance.  To reach the mall entrance from where he stepped onto the sidewalk, Mr. Trahan was required to

---

[1] Mr. Trahan estimated the width of the sidewalk to be fifteen feet.

cross an entrance to one of the mall's service areas,[2] and, as he approached this crossing, he noticed that a large accumulation of surface water blocked his path.

In order to avoid the accumulation, Mr. Trahan moved to his right and up against the wall forming the sidewalk's inner boundary. He did so because he observed an eighteen to twenty-four inch surface area on the service road which appeared to be dry. He testified that he placed his right hand on the bollard[3] located at the entrance of the service area and stepped down onto the apparently dry surface. However, when he stepped down he encountered a buildup of algae on the surface and this substance caused him to slip and fall. Mr. Trahan then got to his feet, walked into the mall, and requested a mall employee to contact mall security.

Joseph Thibodeaux, an Acadiana Mall security guard, responded to the call and inspected the scene of the accident with Mr. Trahan. When Mr. Trahan pointed out the place where he slipped, Mr. Thibodeaux observed some slip marks in the surface algae. He also noted that Mr. Trahan's pants were somewhat wet, but did not note any visible injury.[4]

When Mr. Trahan more closely examined the reason for the accumulation of surface water, he noted that the drain through which the water should have flowed was clogged by algae, leaves, and cigarette butts and that neither the water nor the impedimenta were flowing through the drain. He testified that he then gave Mr. Thibodeaux his name and telephone number and took three pictures of the area.

_____

[2] This service entrance consisted of a driveway running perpendicular to the sidewalk which provided vehicular access to an area adjacent to the mall containing trash disposal equipment as well as other equipment necessary for mall operation.

[3] A bollard is a concrete post approximately four foot high which prevents a vehicle from running into the wall of the mall.

[4] He did acknowledge that his accident report listed a visible injury, but suggested this entry was based on what Mr. Trahan had related to him.

He declined Mr. Thibodeaux's offer to call an ambulance and left the mall. According to Mr. Trahan, approximately twenty minutes elapsed between the time the accident occurred and the time he left the mall.

Mr. Thibodeaux testified that as part of his security duties, he performs daily inspections of the mall's perimeter from a golf cart and that the service entrance where Mr. Trahan fell contains trash compactors and water sprinklers that require daily inspection. That particular service area has two entrances and, although Mr. Thibodeaux could access the area to make his inspection from either entrance, he normally did not use the entrance where Mr. Trahan fell because the other entrance was closer to the trash compactor. Mr. Thibodeaux testified that because he worked a 7:00 a.m. to 3:00 p.m. shift, he would have already inspected the area prior to Mr. Trahan's accident on the morning of July 21, 2010. He acknowledged that the surface water Mr. Trahan attempted to avoid was located within the pedestrian walkway and that the walkway would have been rendered unsafe by the presence of a slippery surface. He described the accumulation as being comprised of water "and everything that you can imagine that wheels and rubber rolls on[.]"

Charlie Pritchett, Acadiana Mall's Director of Operations for twenty-two years, testified that he oversees interior and exterior maintenance, janitorial services, and security services at the mall, and acknowledged that the location where Mr. Trahan fell was within Acadiana Mall's control and responsibility. He learned of Mr. Trahan's fall from Mr. Thibodeaux, visited the scene that same morning, took photographs, and prepared an accident report. He did not recall seeing any physical evidence of Mr. Trahan's fall at the scene, but did circle the area on the photographs as pointed out to him by Mr. Thibodeaux.

3

Although he testified that he did not inspect the drain causing the surface-water accumulation, he did recall that "water was receding to [the] drain" at the time of his inspection. However, when questioned specifically whether the drain was flowing, Mr. Pritchett said he did not know if it was flowing.

According to Mr. Pritchett, Acadiana Mall had no written policy/procedure for inspecting its exterior premises, but crews cleaned the parking lots daily, checking for trash, debris, and safety hazards. He testified that had a cleaning crew member observed algae at the edge of a puddle, the employee would have generated a report and forwarded it to him. As of the time of this accident, Mr. Pritchett had received no such report. On the one hand, Mr. Pritchett testified that Acadiana Mall employees do not perform maintenance on storm drains because they are simply openings through which water flows to an evacuation ditch, and, on the other hand, he acknowledged that in a situation where water is not flowing into the drain, it would be the mall employees' responsibility to unclog the drain.

With regard to the accident report, Mr. Pritchett testified that he and Mr. Thibodeaux completed it, but he could not recall when it had been completed. He further acknowledged that all the entries concerning the accident itself were based on information provided by Mr. Thibodeaux.[5] Mr. Pritchett agreed that the surface water in the area where Mr. Trahan fell was located within a pedestrian walkway, and he further agreed that the materials forming the edge of surface water can be slippery and that the presence of a slippery substance within a pedestrian walkway can render the walkway unsafe.

All of the photographs introduced into evidence reflect that the service driveway contained an accumulation of surface water extending around the outer

---

[5] The accident report contained notations to the effect that Mr. Trahan had tripped in a rain puddle, Mr. Trahan's clothes were wet, he was wearing "Crocs," he had a visible injury, and that he refused medical treatment.

4

edge of the sidewalk into the roadway that ran parallel to the mall building and back into the service road to a point approximately one and one-half to two feet from the point where the sidewalk and the mall building meet. However, in that one-and-one-half-foot to two-foot area, the photographs reflect no standing water, and, in fact, appears to show that the surface is dry.

The trial court's basis for granting the motion for involuntary dismissal was its factual finding that there existed "an open and obvious puddle and that it was obvious to Mr. Trahan and it was obvious to the general public." The trial court based this conclusion on its examination of the photographs introduced into evidence, finding that there was a "puddle after a rain storm." In appealing the trial court's judgment, Mr. Trahan asserts two issues for review by this court:

1.  Whether the trial court committed manifest error in its factual conclusion that the puddle was the defect which was the cause of the plaintiff's fall, although the plaintiff never stepped in the water.

2.  Whether the trial court committed manifest error in its credibility determination based on the witnesses' testimony.

**OPINION**

An involuntary dismissal may be granted by the trial court pursuant to La.Code Civ.P. art. 1672(B), which provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Although the trial court is accorded much discretion in granting a motion for involuntary dismissal, its decision to grant the motion is reviewed pursuant to the manifest error standard of review. *Touchet v. Hampton*, 06-1120 (La.App. 3 Cir.

5

2/7/07), 950 So.3d 895. "When evaluating a motion for involuntary dismissal, the trial court must consider all the evidence, without any special inferences in favor of the opponent of the motion, and grant the dismissal if the plaintiff has not established proof by a preponderance of the evidence." *Smith v. Schumpert*, 48,126, p. 3 (La.App. 2 Cir. 6/26/13), 117 So.3d 315, 318.

Mr. Trahan seeks damages based on La.Civ.Code art. 2317 which provides in pertinent part that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody." This includes damage caused by the "ruin, vice, or defect in things" we own or control. La.Civ.Code art. 2317.1. That article reads in full as follows:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La.Civ.Code art. 2317.1.

Accordingly, in order to prevail in a cause of action based on La.Civ.Code art. 2317.1, a plaintiff must prove: (1) that the defendant had custody of the thing; (2) that it had a vice or defect that presented an unreasonable risk of harm; (3) that the defendant knew or should have known of the vice or defect; (4) that the damage could have been prevented by the exercise of reasonable care; and (5) that the defendant failed to exercise this reasonable care. *Riggs v. Opelousas Gen. Hosp. Trust Auth.*, 08-591 (La.App. 3 Cir. 11/5/08), 997 So.2d 814.

Mr. Trahan clearly factually established through the testimony of Mr. Pritchett, that Acadiana Mall had custody of the premises; and, through his testimony as well as that of Mr. Pritchett and Mr. Thibodeaux, that the area where

6

he fell contained a vice or defect in the form of an algae buildup on the surface of the service road. However, in its reasons for judgment, the trial court only considered the second element set forth in *Riggs* and concluded that the surface-water accumulation shown in all of the photographs did not constitute an unreasonable risk of harm because it was "open and obvious" both to Mr. Trahan and the general public.

Whether a defect constitutes an unreasonable risk of harm is an issue of both fact and law, and the factfinder's conclusions are subject to a manifest error analysis. *Broussard v. State, through the Office of State Bldgs.*, 12-1238 (La. 4/15/13), 113 So.3d 175. Additionally, "in order to be open and obvious, the risk of harm should be apparent to all who encounter the dangerous condition." *Id.* at 188.

After reviewing the record in its entirety, we find that the trial court committed manifest error in its factual findings. In reaching this conclusion, we agree with the trial court that the surface-water accumulation depicted in the photographs is an open and obvious hazard and that Acadiana Mall has no duty to protect Mr. Trahan from that hazard. However, the evidence before us establishes that the surface-water accumulation was not the legal cause of Mr. Trahan's accident. Instead, he sustained his injury when he attempted to avoid the surface water[6] and slipped on an accumulation of algae on a surface which appeared to be dry. Additionally, there is no evidence in the record that the surface water accumulated because of a recent rainstorm. The only testimony elicited on the weather was that it was bright and sunny when Mr. Trahan arrived at the mall. Additionally, the photographs support the "bright and sunny" nature of the weather

_____

[6] Mr. Trahan specifically testified that he did not step into the accumulated surface water, and the record contains no evidence to the contrary.

7

at the time of the accident and reveal no other accumulations of surface water in the area.

Having concluded that the trial court factually erred in finding that the accumulated surface water, and not the accumulated algae, was the legal cause of Mr. Trahan's injuries, we also find that the evidence now before this court supports a finding that Mr. Trahan established all the elements set forth in *Riggs*, 997 So.2d 814 by a preponderance of the evidence. Thus, the trial court erred in granting the motion for involuntary dismissal. However, because the trial ended prior to Acadiana Mall presenting its defense, we must remand for completion of the trial evidence.

## DISPOSITION

We reverse the judgment of the trial court granting an involuntary dismissal in favor of Acadiana Mall CMBS, LLC, ERMC III Property Management Company, LLC, and ERMC II, LP, and remand the matter to the trial court for completion of the trial on the merits. We assess all costs of this appeal to Acadiana Mall CMBS, LLC, ERMC III Property Management Company, LLC, and ERMC II, LP.

**REVERSED AND REMANDED.**

WILSON J. TRAHAN

VERSUS

ACADIANA MALL OF DELAWARE, ET AL.

**Conery, J., concurs in the result for the following reasons.**

In this un-witnessed alleged trip and fall accident near the entrance to the Acadiana Mall, the trial judge granted an involuntary dismissal of plaintiff's case, stating in rather cryptic oral reasons, "I am going to grant the Motion for Directed Verdict, finding that it's an open and obvious *puddle* and that it was obvious to Mr. Trahan and it was obvious to the general public. It's certainly obvious from the photos that it was [a] *puddle* after a rain storm." (emphasis added). His written reasons further stated, "After considering the evidence presented and the credibility of the witnesses' testimony, the court found the *water puddle* to be an open and obvious hazard to all." (Emphasis added.) He made no further comments and did not state how "witness credibility" affected his findings or exactly what he meant by the term "water puddle" or "puddle."

I think it is clear that there is sufficient evidence in the record to support a finding by the trial judge that the *area* where Mr. Trahan allegedly slipped and fell, and not just the accumulated water, was an open and obvious condition such that it did not constitute an unreasonable risk of harm to the public. If so, Acadiana Mall would have no duty to warn and could not be liable under La.Civ.Code art. 2317.1, as recently interpreted by our supreme court in *Broussard v. State, through*

*the Office of State Bldgs.*, 12-1238 (La. 4/15/13), 113 So.3d 175.

Unfortunately, the trial judge's actual wording was not that specific. The record supports a finding that the "water puddle" accumulated from a recent rainstorm as noted in the Mall's incident report. However, the majority concludes that Mr. Trahan slipped in algae immediately adjacent to the water puddle, and that the "water puddle" was not the legal cause of the accident. I do not agree. I believe the trial judge, in using the word "puddle" in his oral reasons and "water puddle" in his written reasons meant that term to include the algae, mud, and debris immediately adjacent to the actual water puddle (referred to as "crud" or "croosh" by the parties), and it was that entire condition that was open and obvious. The pictures introduced into evidence clearly support such a finding.

The plaintiff, Mr. Trahan, was extremely familiar with the mall area and parking lot, as he had a habit of regularly walking at the mall for exercise. He clearly was familiar with the multitude of open parking spots and the many ways with which to access the mall entrances. With an entire mall parking lot to park his car and multiple locations from which to enter the mall, Mr. Trahan chose the *one* location to walk through that had an obvious accumulation of water, with mud, algae and "croosh" equally obvious on the edges of the water puddle, all as clearly shown by the pictures introduced in evidence. Thus, the "condition" giving rise to his fall was open and obvious.

Unfortunately, the trial judge did not specify what he meant by "puddle" or "water puddle." He simply found the "water puddle to be an open and obvious hazard to all." The majority pointed out that it found based on a review of the pictures in the record that the *exact* location of the fall was allegedly inches from the actual "water," and pointed out that the "slip" occurred in the mud and

2

"croosh" immediately adjacent to the water based on a picture showing what appeared to be a skid mark in the mud. The trial judge makes no specific finding that the alleged "skid mark" in the mud was the exact location of the fall. Since this case was decided on the basis of an involuntary dismissal pursuant to La.Civ.Code art. 1672(B), and not as a result of a full trial on the merits, I reluctantly concur in the result to remand to the trial court for completion of a full trial on the merits. A remand will allow the defendant to put on all its evidence and allow the trial judge to make more specific findings and specific credibility determinations.