STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-144

WILSON J. TRAHAN

VERSUS

ACADIANA MALL OF DELAWARE, L.L.C., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2010-6777-J
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Jimmie C. Peters, James T. Genovese, and John E. Conery, Judges.

Peters, J., dissents and assigns written reasons.

**AFFIRMED.**

**Christopher T. Castro**
**Galloway Jefcoat, L.L.P.**
**P. O. Box 61550**
**Lafayette, LA 70596-1550**
**(337) 984-8020**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    Wilson J. Trahan

**Robert M. Kallam**
**Mandy A. Simon**
**Preis PLC**
**P.O. Drawer 94-C**
**Lafayette, LA 70509**
**(337) 237-6062**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Acadiana Mall of Delaware CMBS, LLC,**
    **ERMC III Property Management Company, LLC, and**
    **ERMC II, LP**

**GENOVESE, J.**

Plaintiff, Wilson J. Trahan, appeals a trial court judgment dismissing his suit for damages against Defendants, Acadiana Mall CMBS, LLC; ERMC III Property Management Company, LLC; and, ERMC II, LP (hereinafter collectively referred to as "Acadiana Mall"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This litigation arises out of a July 21, 2010 accident at the Acadiana Mall shopping center in Lafayette, Louisiana. At approximately 9:30 a.m. on that day, Mr. Trahan sustained a closed fracture of his right fibula when he slipped and fell on the shopping center premises. Previously, the trial court granted Acadiana Mall a judgment of involuntary dismissal, and, on appeal, this court reversed that judgment and remanded the matter to the trial court for further proceedings. *Trahan v. Acadiana Mall of Delaware*, 14-232 (La.App. 3 Cir. 10/1/14), 149 So.3d 359. The subsequent proceedings on remand resulted in a second trial court judgment in favor of Acadiana Mall, dismissing Mr. Trahan's claims, and the matter is again before us as a result of Mr. Trahan timely appealing that judgment.

The evidence adduced on remand did little to change the basic facts set forth in our initial opinion:

> Mr. Trahan testified at trial that he arrived at the mall at approximately 9:30 a.m. on July 21, 201[0], intending to walk inside the mall premises for exercise. Because the outside temperature was already approaching ninety degrees Fahrenheit, he parked his vehicle in a shady area and proceeded on foot across the parking lot and roadway that ran adjacent to the mall structure. He stepped onto the sidewalk,[1] which lies adjacent to the mall building and extends around the mall perimeter, and began walking toward the mall entrance. To reach the mall entrance from where he stepped onto the sidewalk, Mr. Trahan was required to cross an entrance to one of the mall's service

---

[1] Mr. Trahan estimated the width of the sidewalk to be fifteen feet.

areas,[2] and, as he approached this crossing, he noticed that a large accumulation of surface water blocked his path.

In order to avoid the accumulation, Mr. Trahan moved to his right and up against the wall forming the sidewalk's inner boundary. He did so because he observed an eighteen to twenty-four inch surface area on the service road which appeared to be dry. He testified that he placed his right hand on the bollard[3] located at the entrance of the service area and stepped down[,] onto the apparently dry surface. However, when he stepped down he encountered a buildup of algae on the surface[,] and this substance caused him to slip and fall. Mr. Trahan then got to his feet, walked into the mall, and requested a mall employee to contact mall security.

Joseph Thibodeaux, an Acadiana Mall security guard, responded to the call and inspected the scene of the accident with Mr. Trahan. When Mr. Trahan pointed out the place where he slipped, Mr. Thibodeaux observed some slip marks in the surface algae. He also noted that Mr. Trahan's pants were somewhat wet, but did not note any visible injury.[4]

When Mr. Trahan more closely examined the reason for the accumulation of surface water, he noted that the drain through which the water should have flowed was clogged by algae, leaves, and cigarette butts and that neither the water nor the impedimenta were flowing through the drain. He testified that he then gave Mr. Thibodeaux his name and telephone number and took three pictures of the area. He declined Mr. Thibodeaux's offer to call an ambulance and left the mall. According to Mr. Trahan, approximately twenty minutes elapsed between the time the accident occurred and the time he left the mall.

Mr. Thibodeaux testified that as part of his security duties, he performs daily inspections of the mall's perimeter from a golf cart and that the service entrance where Mr. Trahan fell contains trash compactors and water sprinklers that require daily inspection. That particular service area has two entrances[,] and, although Mr. Thibodeaux could access the area to make his inspection from either entrance, he normally did not use the entrance where Mr. Trahan fell because the other entrance was closer to the trash compactor. Mr. Thibodeaux testified that because he worked a 7:00 a.m. to 3:00 p.m.

---

[2]This service entrance consisted of a driveway running perpendicular to the sidewalk which provided vehicular access to an area adjacent to the mall containing trash disposal equipment as well as other equipment necessary for mall operation.

[3]A bollard is a concrete post approximately four [feet] high which prevents a vehicle from running into the wall of the mall.

[4]He did acknowledge that his accident report listed a visible injury, but suggested this entry was based on what Mr. Trahan had related to him.

shift, he would have already inspected the area prior to Mr. Trahan's accident on the morning of July 21, 2010. He acknowledged that the surface water Mr. Trahan attempted to avoid was located within the pedestrian walkway and that the walkway would have been rendered unsafe by the presence of a slippery surface. He described the accumulation as being comprised of water "and everything that you can imagine that wheels and rubber rolls on[.]"

Charlie Pritchett, Acadiana Mall's Director of Operations for twenty-two years, testified that he oversees interior and exterior maintenance, janitorial services, and security services at the mall, and acknowledged that the location where Mr. Trahan fell was within Acadiana Mall's control and responsibility. He learned of Mr. Trahan's fall from Mr. Thibodeaux, visited the scene that same morning, took photographs, and prepared an accident report. He did not recall seeing any physical evidence of Mr. Trahan's fall at the scene, but did circle the area on the photographs as pointed out to him by Mr. Thibodeaux.

Although he testified that he did not inspect the drain causing the surface water accumulation, he did recall that "water was receding to [the] drain" at the time of his inspection. However, when questioned specifically whether the drain was flowing, Mr. Pritchett said he did not know if it was flowing.

According to Mr. Pritchett, Acadiana Mall had no written policy/procedure for inspecting its exterior premises, but crews cleaned the parking lots daily, checking for trash, debris, and safety hazards. He testified that had a cleaning crew member observed algae at the edge of a puddle, the employee would have generated a report and forwarded it to him. As of the time of this accident, Mr. Pritchett had received no such report. On the one hand, Mr. Pritchett testified that Acadiana Mall employees do not perform maintenance on storm drains because they are simply openings through which water flows to an evacuation ditch, and, on the other hand, he acknowledged that in a situation where water is not flowing into the drain, it would be the mall employees' responsibility to unclog the drain.

With regard to the accident report, Mr. Pritchett testified that he and Mr. Thibodeaux completed it, but he could not recall when it had been completed. He further acknowledged that all the entries concerning the accident itself were based on information provided by Mr. Thibodeaux.[5] Mr. Pritchett agreed that the surface water in the area where Mr. Trahan fell was located within a pedestrian walkway, and he further agreed that the materials forming the edge of surface water can be slippery and that the presence of a slippery substance within a pedestrian walkway can render the walkway unsafe.

---

[5] The accident report contained notations to the effect that Mr. Trahan had tripped in a rain puddle, Mr. Trahan's clothes were wet, he was wearing "Crocs," he had a visible injury, and that he refused medical treatment.

All of the photographs introduced into evidence reflect that the service driveway contained an accumulation of surface water extending around the outer edge of the sidewalk into the roadway that ran parallel to the mall building and back into the service road to a point approximately one and one-half to two feet from the point where the sidewalk and the mall building meet. However, in that one-and-one-half-foot to two-foot area, the photographs reflect no standing water, and, in fact, appears to show that the surface is dry.

*Id.* at 361-63.

In our first opinion, this court reversed the trial court's involuntary dismissal of Mr. Trahan's suit against Acadiana Mall, finding that the trial court committed manifest error when it concluded that Mr. Trahan's accident was caused by the open and obvious puddle rather than the apparently dry-looking, but algae-accumulated surface next to the puddle. We further stated:

Having concluded that the trial court factually erred in finding that the accumulated surface-water, and not the accumulated algae, was the legal cause of Mr. Trahan's injuries, we also find that the evidence now before this court supports a finding that Mr. Trahan established all the elements set forth in *Riggs* [*v. Opelousas General Hospital Trust Authority*, 08-591 (La.App. 3 Cir. 11/5/08)], 997 So.2d 814[,] by a preponderance of the evidence. Thus, the trial court erred in granting the motion for involuntary dismissal. However, because the trial ended prior to Acadiana Mall presenting its defense, we must remand for completion of the trial evidence.

*Id.* at 364.

The evidence on remand consisted of additional testimony from Mr. Thibodeaux and Mr. Pritchett as a part of Acadiana Mall's defense to Mr. Trahan's claims. At the close of this evidence, the trial court rendered oral reasons for judgment again finding that Mr. Trahan slipped because he stepped into an open and obvious hazard consisting of the puddle and its surrounding perimeter. In reaching this conclusion, the trial court stated the following:

All right. Well, after hearing all of the testimony[,] I'm comfortable with rendering a verdict again in this case that when the plaintiff here stepped, he stepped – he certainly saw the puddle and he saw the surrounding debris and mud, whatever you want to call it,

"crootch".[6] I'd call it mud. But whatever it's called. He stepped, he put his hands on the bollard to steady himself or whatever you want to call it. Because one explanation for putting your hands on something when you're normally walking, and that's to steady yourself because you think you're getting in a slippery condition. And that's what he did. And he slipped.

And there's no doubt. The security guard testified he saw the slip mark in the mud. And that means it was wet. Because a slip mark doesn't make a muddy slip mark unless it's mud. And so he slipped in the mud in which he knew it was mud. And I'm going to call it mud, because that's what I would call it. He slipped in the mud when he stepped in it and fell. And he knew it was mud. He saw, he put his hand down to steady himself, he stepped in it hoping to not slip in it, but he did.

And so, I find in favor of the defendant, the same as last time.

In the previous appeal, this court made the distinction between the "accumulated surface-water" and the "accumulated algae[.]" *Id.* Thus, for purposes of clarity, following the testimony on remand, and the trial court's oral ruling, the trial court was specifically asked for clarification relative to the actual puddle of standing water and the area surrounding the puddle of water. Specifically, the trial court, when asked to clarify the area encompassing the open and obvious risk, stated:

Let me explain my little country boy mentality here. It started off as a complete puddle and then as it drained they had the edges that were still wet, and I consider that to be part of the puddle. So, the whole perimeter of the puddle that the security guard testified that extended all the way to the bollard is what I'm calling the puddle. As the day went on that puddle got smaller and smaller as the pictures depicted.

When asked to further clarify in light of this court's finding that the trial court factually erred in blaming Mr. Trahan's accident on the "accumulated surface-water" and not the "accumulated algae," the trial court stated: "I call it mud. I don't know what anybody else would call it. I'm looking at the pictures. A slip in the mud[.]" Thus, what this court characterized as "accumulated algae," the trial

---

[6] Mr. Trahan used this term to describe the algae associated with standing water which he described as very slippery.

court "would call it mud. And that's what he slipped in[,] and that's what made the mark on the picture."[7] Therefore, whatever name is given to the substance, the trial court found that it was "[a]bsolutley open and obvious."

On November 3, 2015, the trial court submitted a written judgment conforming to its ruling. The trial court then responded to Mr. Trahan's request for written reasons for judgment filed on November 13, 2015, by providing him with a transcript of the oral reasons for judgment. Thereafter, Mr. Trahan perfected the appeal currently before us.

## ASSIGNMENTS OF ERROR

Mr. Trahan presents the following assignments of error for our review:

1. Whether the trial court committed manifest error in its factual conclusion that the substance the that [sic] Plaintiff slipped on, and which was the cause of his fall, was open and obvious thereby terminating the Plaintiff's lawsuit; the most reliable evidence demonstrates that the place where the Plaintiff stepped appeared dry.

2. Whether the trial court committed manifest error in its factual conclusion that the Plaintiff put his hand of the bollard to "steady" himself.

3. Whether [t]he evidence upon which the trial court relies in concluding that the perimeter of the puddle extended to the bollard is unreliable and controverted by the photographic evidence.

4. Whether the [t]rial [c]ourt was manifestly erroneous in its application of the "open and obvious" doctrine and dismissing the Plaintiff's lawsuit.

## LAW AND DISCUSSION

The law applicable to this matter was set out in our original opinion as follows:

Mr. Trahan seeks damages based on La.Civ.Code art. 2317 which provides in pertinent part that "[w]e are responsible, not only

---

[7] The trial court was referring to the pictures introduced into evidence showing a visible mark where Mr. Trahan slipped.

for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody." This includes damage caused by the "ruin, vice, or defect in things" we own or control. La.Civ.Code art. 2317.1. That article reads in full as follows:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La.Civ.Code art. 2317.1.

> Accordingly, in order to prevail in a cause of action based on La.Civ.Code art. 2317.1, a plaintiff must prove: (1) that the defendant had custody of the thing; (2) that it had a vice or defect that presented an unreasonable risk of harm; (3) that the defendant knew or should have known of the vice or defect; (4) that the damage could have been prevented by the exercise of reasonable care; and (5) that the defendant failed to exercise this reasonable care. *Riggs v. Opelousas Gen. Hosp. Trust Auth.*, 08-591 (La.App. 3 Cir. 11/5/08), 997 So.2d 814.

*Id.* at 363-64.

The factual findings of the trial court are subject to the manifest error/clearly wrong standard of review.

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

*Snider v. La. Med. Mut. Ins. Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So.3d 319, 323 (quoting *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989)).

It is undisputed that Acadiana Mall had custody of the area where the accident occurred. It is also undisputed that the walkway contained a vice or

defect, that Acadiana Mall knew or should have known of the existence of the vice or defect, that the vice or defect could have easily been prevented by the exercise of reasonable care, and that Acadiana Mall failed to exercise reasonable care. The only disputed issue is whether the existing vice or defect presented an unreasonable risk of harm. A vice or defect does not constitute an unreasonable risk of harm if it is open and obvious. *Broussard v. State ex rel. Office of State Bldgs.*, 12-1238 (La. 4/5/13), 113 So.3d 175. "In order for a hazard to be considered open and obvious, [our supreme court] has consistently stated the hazard should be one that is open and obvious to all, *i.e.*, everyone who may potentially encounter it." *Id.* at 184.

In this case, the additional testimony on remand included that of Mr. Thibodeaux, a security officer at Acadiana Mall. Mr. Thibodeaux testified that he was called to the location where the accident happened by Mr. Les Comeaux, a maintenance man. According to Mr. Thibodeaux, he arrived there quickly. Mr. Thibodeaux had a conversation with Mr. Trahan, who showed him where he had slipped and fallen. Mr. Thibodeaux had the opportunity to see the accident scene just after its occurrence and was able to provide the trial court with a description of how the area appeared. Mr. Thibodeaux was also able to refer to photographs of the accident scene and provide the trial court with an explanation of what was depicted in the photographs.

It is clear from the testimony of Mr. Thibodeaux that there was water present at the location of the accident. By his accounting, the presence of the water was greater than that depicted in some of the photographs due to evaporation which occurred from the heat of the day. Mr. Thibodeaux explained the presence of water and explained that the fall happened "in a wet area." He also described the presence of "crootch" in the area. In his words, the "entire area" was covered in

water and "crootch." He stated the area "wasn't dry[;] . . . [i]t was full of water." Notably, Mr. Thibodeaux confirms that the area was wet, that he could see the slip marks from where Mr. Trahan fell, and that Mr. Trahan had "moisture" on his thigh.

The second witness to testify on remand was Mr. Pritchett, the Director of Operations of Acadiana Mall. Mr. Pritchett learned of Mr. Trahan's accident from Mr. Thibodeaux. The two of them completed the incident report and took pictures of the location where the accident happened. Mr. Pritchett estimated that the photographs taken by him were taken between one-and-a-half to two hours after Mr. Trahan's fall. He testified that by the time he took the photographs, the water in the area had receded. In his words, "[t]here was like a water mark where the pavement was still damp, or the concrete was still damp and then the area where the water was standing."

Mr. Trahan's testimony on the condition of the area of his fall differed from that of Mr. Thibodeaux and Mr. Pritchett. Mr. Trahan testified that he observed standing water and an area eighteen to twenty-four inches wide that "looked like it was dry." He explained that when he stepped, he stepped into an area that appeared to be dry and that "[i]t kind of had an ashy look from the sun." Mr. Trahan was clear that he did not step into the water puddle.

In reaching our conclusion herein, we note that both parties, in brief to this court, discuss the trial court's statement that Mr. Trahan "put his hands on the bollard to steady himself" insomuch as that action supported the conclusion that Mr. Trahan was aware of the open and obvious condition before he stepped and fell. However, as explained by our supreme court in *Broussard*, 113 So.3d at 188, the relevant inquiry is not whether Mr. Trahan was aware of the open and obvious condition of the area; rather, "in order to be open and obvious, the risk of harm

9

should be apparent to all who encounter the dangerous condition." We find that the record supports the trial court's conclusion in this case that it was. Thus, whether Mr. Trahan used the bollard to steady himself because he was aware of the slippery condition is irrelevant in a determination of whether the condition was open and obvious. "The focus on whether an alleged defect is open and obvious is 'on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge.'" *Christiano v. S. Scrap Recycling*, 13-595, p. 8 (La.App. 5 Cir. 12/27/13), 131 So.3d 1059, 1064 (quoting *Broussard*, 113 So.3d at 188).

In *Christiano*, the fifth circuit affirmed the trial court's grant of a motion for involuntary dismissal based upon its finding that the alleged defect was open and obvious. Analogous to the case at bar, *Christiano* involved a slip and fall in an area described as "a little sloppy[,]" but that appeared to by dry. *Id.* at 1061. The "slop" in that case was "oil and some other kind of substance[,]" which was present next to some "dried mud." *Id.* The plaintiff testified: "It was wet underneath the mud. It was like some more slop, but you couldn't see it just by looking at it. It was like it was dry." *Id.* Affirming the trial court, the fifth circuit reasoned:

> Mrs. Christiano testified that she was being careful when she walked into the area covered with what appeared to be dried mud because that area was surrounded by "slop," which she described as "oil and some other kind of substance." She acknowledged that there was "slop" next to the dried mud, but she did not think or know that there was "slop" underneath the dried mud. She admitted that there were no holes or cracks on the cement where she fell; rather, it was the "slop" and mud that caused her to fall.

*Id.* at 1064.

In the instant matter, the trial court was presented with conflicting testimony. When considering the evidence, the trial court had the opportunity to observe the

demeanor of the witnesses and to assess their credibility. The trial court considered the evidence, including the photographs, and made a determination that Mr. Trahan's fall was caused by an open and obvious condition. Additionally, the trial court was specific in elaborating on what it considered to be encompassed by the puddle and concluded that Mr. Trahan slipped in "mud." We find that this determination is supported by the record. There are certainly two permissible views of the evidence in this case; however, "[w]here two permissible views of the evidence exist, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880, 883 (La.1993). We are bound not to substitute our judgment for that of the trial court.

## DISPOSITION

Based on the foregoing, we affirm the judgment of the trial court in favor of Defendants, Acadiana Mall CMBS, LLC; ERMC III Property Management Company, LLC; and, ERMC II, LP. All costs of this appeal are assessed to Plaintiff, Wilson J. Trahan.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

16-144

WILSON J. TRAHAN

VERSUS

ACADIANA MALL OF DELAWARE, ET AL.

PETERS, J., dissents.

I agree with the majority that this is a manifest error case. However, unlike the majority, I find that the trial court was clearly wrong in its factual conclusions. Specifically, the trial court erroneously relied on testimony based on supposition in reaching the factual conclusions that the defect causing Mr. Trahan's injuries was open and obvious. The testimony relied on by the trial court is not supported by the evidence.

There are two testimonial versions of this accident: Mr. Trahan's version and Mr. Thibodeaux's version. However, Mr. Thibodeaux did not witness the accident.

According to Mr. Trahan, the standing water in the service road caused him to have to step down from the sidewalk at its intersection with the service road that was closest to the mall itself. He placed his right hand on the bollard and stepped down onto a surface area eighteen to twenty-four inches wide which appeared to be dry. In doing so, he slipped on a buildup of algae on the apparently dry surface area. Mr. Trahan's version of the accident is supported by photographs he took within thirty minutes of the accident as well as the photographs taken by Charlie Pritchard approximately one hour after the occurrence of the accident. Both sets of

photographs clearly show an eighteen to twenty-four inch area between the sidewalk and the standing water which appears to be dry.

Mr. Trahan testified that when he fell, his right knee and foot hyperextended and rolled to the inside, and that his right hip struck the curb. As a result of his fall, he sustained a fractured fibula in his right leg as well as bruising injuries to his right shoulder, hip, knee, leg, ankle, and foot. The medical evidence supports Mr. Trahan's version of the mechanics of the accident. In fact, Mr. Thibodeaux's testimony based on his observations and not his conclusions, supports Mr. Trahan's version of the accident as well. Mr. Thibodeaux testified that when he first arrived at the scene, he observed moisture on Mr. Trahan's pants at the thigh level. This observation is totally consistent with Mr. Trahan's testimony that his right hip struck the curb. Had Mr. Trahan fallen where Mr. Thibodeaux observed the purported skid mark, he would have been soaking wet.

Additionally, Mr. Thibodeaux admitted that Mr. Trahan's photographs reflected an accurate picture of the scene of the accident sometime after he arrived at the scene, including the fact that there existed a section of roadway adjacent to the sidewalk that was water free. In trying to explain his purported earlier observation of water adjacent to the sidewalk, Mr. Thibodeaux suggested that during the thirty minutes he spoke with Mr. Trahan, the water had evaporated sufficiently to expose the water-free area depicted in the photographs. This explanation is simply not plausible. According to Mr. Pritchard, the photographs taken by him over one hour after the accident depicted the same scene as did Mr. Trahan's photographs. For Mr. Thibodeaux's explanation to be accurate, the exceedingly fast evaporation process he described would have to come to a come to a complete stop between the taking of Mr. Trahan's pictures and the taking of Mr. Pritchard's pictures.

In its reasons for judgment, the trial court accepted Mr. Thibodeaux's suggestion that Mr. Trahan used the bollard to steady himself because he [Mr. Trahan] recognized that he was "getting in a slippery condition[,]" and in doing so, "he slipped." The problem with the trial court's factual conclusions from a manifest error/clearly wrong analysis is that there is no evidence Mr. Trahan used the bollard to steady himself, and the only part of Mr. Thibodeaux's testimony supported by the other evidence in the record is that Mr. Trahan's pants were merely damp. Additionally, the trial court concluded, based on Mr. Thibodeaux's testimony, that Mr. Trahan slipped in mud at the edge of the sidewalk. There is no evidence of an accumulation of mud where Mr. Trahan suffered his accident. The only evidence is that he slipped on a surface made slippery by an algae buildup, not by an accumulation of mud.

As we stated the first time this matter was before us, "[i]t is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Evans v. Lungrin*, 97-541, 97-577, p. 6 (La. 2/6/98), 708 So.2d 731, 735. Additionally,

> [I]n order to prevail in a cause of action based on La.Civ.Code art. 2317.1, a plaintiff must prove: (1) that the defendant had custody of the thing; (2) that it had a vice or defect that presented an unreasonable risk of harm; (3) that the defendant knew or should have known of the vice or defect; (4) that the damage could have been prevented by the exercise of reasonable care; and (5) that the defendant failed to exercise this reasonable care.

*Trahan v. Acadiana Mall of Del.*, 14-232, p. 6 (La.App. 3 Cir. 10/1/14), 149 So.3d 359, 364.

A vice or defect does not constitute an unreasonable risk of harm if it is open and obvious. *Broussard v. State ex rel. Office of State Bldgs.*, 12-1238 (La. 4/5/13), 113 So.3d 175. Additionally, "[i]n order to be open and obvious, the risk of harm should be apparent to all who encounter the dangerous condition." *Id.* at 188. In

3

this case, Mr. Thibodeaux acknowledged that the surface adjacent the standing water would be slippery from any algae buildup, even if it appeared to be dry. In other words, the dangerous condition was not open and obvious.

I find that Mr. Trahan established by a preponderance of the evidence that Acadiana Mall had custody of the area where the accident occurred; that the area wherein Mr. Trahan suffered his accident contained a vice or defect; that Acadiana Mall knew or should have known of the existence of the vice or defect; that the vice or defect could have easily been prevented by the exercise of reasonable care; and that Acadiana Mall failed to exercise reasonable care. Based on this finding, I would award damages to Mr. Trahan. I reach the conclusion that the walkway contained a vice or defect based on the physical evidence and Mr. Thibodeaux's testimony that the pedestrian walkway would have been rendered unsafe by the presence of a slippery surface—and a slippery surface is exactly what Mr. Trahan slipped on in sustaining his injury. Mr. Thibodeaux testified that he conducted numerous inspections of the area on a daily basis, yet neither he nor any other representative of Acadiana Mall recognized that the water in this area was not being properly removed by the ten-inch drain. Thus, Acadiana Mall knew or should have known of the vice or defect. Additionally, Mr. Pritchard testified that a buildup of debris in such an environment is to be expected because the debris would not normally be dispatched with the flowing water. The testimony of both Mr. Pritchard and Mr. Thibodeaux establish that the vice or defect could have been prevented simply by maintaining a clear path for the accumulating water to be removed by the ten-inch storm drain provided for that purpose, and by power washing the accumulated debris. The evidence establishes that Acadiana Mall failed to exercise this reasonable care. I also find that the existing vice or defect presented an unreasonable risk of harm.

4

I would reverse the judgment of the trial court finding that Mr. Trahan failed to prove the elements of his claim, and would award him damages for the injuries he sustained.