PETERS, J.,
dissents.
hi agree with the majority that this is a manifest error case. However, unlike the majority, I find that the trial court was clearly wrong in its factual conclusions. Specifically, the trial court erroneously relied on testimony based on supposition in reaching the factual conclusions that the defect causing Mr. Trahan’s injuries was *828 open and obvious. The testimony relied op by the trial court is not supported by the evidence.
There are two testimonial versions of this accident: Mr. Trahan’s version and Mr. Thibodeaux’s version. However, ■ Mr. Thibodeaux' did not- witness the accident.
According to Mr. Trahan, the standing water in the service road caused him to have to step down from the sidewalk at its intersection with the service road that was closest to the mall itself. He placed his right hand on the bollard and stepped down onto a surface area eighteen to twenty-four inches wide which appeared to be dry. In doing só, he slipped on a buildup of algae on the apparently dry surface area. Mr. Trahan’s version of the accident is supported by photographs he took within thirty minutes of the accident as well 'as the photographs taken by Charlie Pritch-ard approximately one hour after the' occurrence of the accident. Both sets of |2photographs clearly show an eighteen to twenty-four inch area between the sidewalk and the standing water which appears to be dry.
Mr. Trahan testified that when he fell, his right knee and foot hyperextended and rolled to the inside, and that his right hip struck the curb. As a result of his fall, he sustained a fractured fibula in his right leg as well as bruising injuries to his right shoulder, hip, knee, leg, ankle, and foot. The medical evidence supports Mr. Tra-han’s version of the mechanics of the accident. In fact, Mr. Thibodeaux’s testimony based on his observations and not his conclusions, supports Mr, Trahan’s version of the accident as well. Mr. Thibodeaux testified that when he first arrived at ,thp scene, he observed moisture on Mr, Tra-han’s pants at the thigh level. This observation is totally consistent with. Mr. Tra: han’s testimony that his right hip struck the curb. Had Mr. Trahan fallen, where Mr. Thibodeaux observed the purported skid mark, he would have been soaking wet.
Additionally, Mr. Thibodeaux admitted that Mr. Trahan’s photographs reflected an accurate picture of the scene of the accident sometime after he arrived at the scene, including the fact that there existed a section of roadway adjacent to the sidewalk that was water free. In trying to explain his purported earlier observation of water adjacent to the sidewalk, Mr. Thibodeaux suggested that during the thirty minutes he spoke with Mr. Trahan, the water had evaporated sufficiently to expose the water-free area depicted in the photographs. This explanation is simply not plausible. According to Mr. Pritchard, the photographs taken by him over one hour after the accident depicted the same scene as did Mr, Trahan’s photographs. For Mr. Thibodeaux’s explanation to be accurate, the exceedingly fast evaporation process he described would have to come to a come to a complete stop between the taking 'of Mr. Trahan’s pictures and the taking of Mr. Pritchard’s pictures.
| RIn its reasons for judgment, the trial court accepted Mr. Thibodeaux’s suggestion that Mr. Trahan used the bollard to steady himself because he [Mr. Trahan] recognized that he was “getting in a slippery condition[,]” and in doing so, “he slipped.” The problem with the trial court’s factual conclusions from a manifest error/clearly wrong analysis is that there is no evidence Mr. Trahan used the bollard to steady himself, and the only part of Mr. Thibodeaux’s testimony supported by the other evidence in the record is that Mr. Trahan’s pants were merely damp. Additionally, the trial court concluded, based on Mr. Thibodeaux’s testimony, that Mr. Tra-han slipped in mud at the edge of the sidewalk. There is no evidence of an accumulation of mud where Mr. Trahan suf *829 fered his accident. The only evidence is that he slipped on a surface made slippery by an algae buildup, not by an accumulation of mud.
As we stated the first time this matter was before us, “[i]t is well-settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong.’” Evans v. Lungrin, 97-541, 97-577, p. 6 (La. 2/6/98), 708 So.2d 731, 735. Additionally,
[I]n order to prevail in a cause of action based on La.Civ.Code art. 2317.1, a plaintiff must prove: (1) that the defendant had custody of the thing; (2) that it had a vice or defect that presented an unreasonable risk of harm; (3) that the defendant knew or should have known of the vice or defect; (4) that the damage could have been prevented by the exercise of reasonable care; and (5) that the defendant failed to exercise this reasonable care.
Trahan v. Acadiana Mall of Del., 14-232, p. 6 (La.App. 3 Cir. 10/1/14), 149 So.3d 359, 364.
A vice or defect does not constitute an unreasonable risk of harm if it is open and obvious. Broussard v. State ex rel. Office of State Bldgs., 12-1238 (La. 4/5/13), 113 So.3d 175. Additionally, “[i]n order to be open and obvious, the risk of harm should be apparent to all who encounter the dangerous condition.” Id. at 188. In 14this case, Mr. Thibodeaux acknowledged that the surface adjacent the standing water would be slippery from any algae buildup, even if it appeared to be dry. In other words, the dangerous condition was not open and obvious.
I find that Mr. Trahan established by a preponderance of the evidence that Acadi-ana Mall had custody of the area where the accident occurred; that the area wherein Mr. Trahan suffered his accident contained a vice or defect; that Acadiana Mall knew or should have known of the existence of the vice or defect; that the vice or defect could have easily been prevented by the exercise of reasonable care; and that Acadiana Mall faded to exercise reasonable care. Based on this finding, I would award damages to Mr. Trahan. I reach the conclusion that the walkway contained a vice or defect based on the physical evidence and Mr. Thibodeaux’s testimony that the pedestrian walkway would have been rendered unsafe by the presence of a slippery surface — and a slippery surface is exactly what Mr. Trahan slipped on in sustaining his injury. Mr. Thibodeaux testified that he conducted numerous inspections of the area on a daily basis, yet neither he nor any other representative of Acadiana Mall recognized that the water in this area was not being properly removed by the ten-inch drain. Thus, Acadiana Mall knew or should have known of the vice or defect. Additionally, Mr. Pritchard testified that a buildup of debris in such an environment is to be expected because the debris would not normally be dispatched with the flowing water. The testimony of both Mr. Pritchard and Mr. Thibodeaux establish that the vice or defect could have been prevented simply by maintaining a clear path for the accumulating water to be removed by the ten-inch storm drain provided for that purpose, and by power washing the accumulated debris. The evidence establishes that Acadiana Mall failed to exercise this reasonable care. I also find that the existing vice or defect presented an unreasonable risk of harm.
|J would reverse the judgment of the trial court finding that Mr. Trahan failed to prove the elements of his claim, and would award him damages for the injuries he sustained.